FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2015 NOV 18 PM 12: 13
CLERK'S OFFICE
AT GREENBELT
BY_____DEPUTY

Larry N. Dorsey and Arlene E. Couch
Plaintiffs *in Propria Persona*
2200 Emory Road
Reisterstown, Maryland

UNITED STATES DISTRICT COURT

DISTRICT OF MARYLAND

LARRY N. DORSEY AND ARLENE E. COUCH

PLAINTIFFS

v.

CASE NO. WMN15cv3506

JAMES E. CLARKE, RENEE DYSON, BRIAN THOMAS, ERIN M. COHEN, HUGH J. GREEN PATRICK M. A. DECKER, DBA "SUBSTITUTE TRUSTEES" AND SELECT PORTFOLIO SERVICES, INC. DBA "SPS" AND U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION AS TRUSTEE FOR BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2005-AQ2 ASSET-BACKED CERTIFICATES, SERIES 2005-AQ2.

DEFENDANTS

_____________________________________________/

**COUNT I – COMPLAINT FOR VIOLATIONS OF FAIR DEBT COLLECTION PRACTICES ACT (FDCPA); 15 U.S.C. § 1692 ET SEQ.**

Come now the plaintiffs LARRY N. DORSEY AND ARLENE E. COUCH and sue the defendant JAMES E. CLARKE, RENEE DYSON, BRIAN THOMAS, ERIN M. COHEN, HUGH J. GREEN PATRICK M. A. DECKER, DBA "SUBSTITUTE TRUSTEES" for penalties and actual damages for unfair and deceptive collection practices in violation of the Fair Debt Collection Practices Act, and for other relief as set forth herein.

Plaintiffs have resided at the address known as 2200 Emory Road, Reisterstown, Maryland, Carroll County, for all times material to this complaint, for all times material to this complaint.

The defendant is a group of individuals doing business as "Substitute Trustees" in the State of Maryland with its principle place of business at the address of 1602 Village Market Blvd SE #310, Leesburg, VA 20175, for all times material to this

complaint.

Defendant is a debt collector as defined under Title 15 U.S.C. §1692(a). Defendant has undertaken actions that involve the collection of a consumer debt against the plaintiff. The debt collection involves a purported debt for personal, family or household purposes.

Defendant is a debt collector as defined under Title 15 U.S.C. §1692(a)(6) and is not excluded by any provision of what defines a "debt collector" under this statute.

This is a complaint for unfair and deceptive collection practices involving collateral against which the defendants have falsely asserted various rights or claims.

The subject property that has given rise to this complaint is known as a trust deed, and rights thereunder, and land with fixtures on the land that is encumbered by a trust deed recorded in Carroll County, Maryland, a true and correct copy of which is attached.

**PLAIN STATEMENT**

Plaintiff entered into a collateral agreement known as a trust deed involving his property as described herein. This obligation was incurred as a financial obligation that was primarily for family, personal or household purposes. This trust deed did not name or confer any power upon the defendants

At some time after this trust deed was recorded, the defendant began attempting to foreclose under the terms of the trust deed, as if it were the holder or in control of the note and trust deed.

The plaintiff is the mortgagor in a trust deed that was recorded on or soon after the date of February 20th 2012 in Carroll County, Maryland, in the amount of $388,000. The deed secured the payment of a promissory note ARGENT MORTGAGE COMPANY, LLC, the lender stated on the trust deed. The trustee is Wayne Lee and there were no other parties identified as having an interest in this trust deed or having any rights thereunder, within the instruments, (note and trust deed).

The defendant has somehow acquired the personal and banking information of each of the plaintiff and has used that information for their own personal gain and benefit without any permissible purpose.

Within the previous twelve months, the defendant began sending written communication to the plaintiff stating that it was representing various parties having rights under the same trust deed, or at least plaintiff understood that it was representing parties, including the other defendants, the trustee, a bank, a law firm, etc. who were all claiming some rights in the plaintiffs' property.

Plaintiff asked the defendant to provide verification that these parties it was supposed to have been representing, whose names it was using, or who were aware of its actions. No response was given.

The plaintiff explained that the reason for these requests were, in part, because none of these parties were named in the trust deed referenced by this defendant.

The defendant sent written communication to the plaintiffs stating that it was representing various parties, or at least plaintiff understood that it was representing parties, including the other defendants, the trustee, a bank, a law firm, etc. who were all claiming some rights in the plaintiffs' property.

Plaintiffs asked the defendant to provide verification that these parties she was supposed to have been representing, whose names she was using, were aware of her actions.

The plaintiffs explained that the reason for these requests were, in part, because none of these parties were named in the trust deed referenced by this defendant.

Plaintiffs also asked the defendant to explain how it obtained the personal and private banking, financial and identifying information of the plaintiffs. The defendant failed or refused to answer these questions, in spite of being advised that she was in violation of the Fair Debt Collection Practices Act and may be subject to penalties and actual damages for continuing to undertake these actions.

The purported debt is not a debt held or collected under the name of the defendant.

The defendant made false representations that it was the holder of a note or promise to pay in which the plaintiff owed the defendant.

The defendant made false representations that it had rights to foreclose against the plaintiffs' property (home) under the provisions of a trust deed that is recorded against the title of the plaintiffs' property in the county where the property is situated.

The defendant is utilizing the statutory foreclosure process for this state for the purpose of engaging in a scheme that aims to conceal the identity, source, and destination of illicitly-obtained money, specifically the plaintiffs' promissory note.

First, the defendant acquired a copy, forged or counterfeit version of the plaintiffs' promissory note. The actual steps taken are unclear at this time but there was no valuable consideration given in the process and the original lender or originator either no longer exists or has no records of this instrument.

Second, the defendant is and has been employing a complex scheme, including what has become known recently as "securitization", and then assignments, trusteeships and other counter parties or affiliates such as "serving agents" to obscure who initially received the money.

Finally, the parties involved have been compensated in a list of different ways from this scheme, such as removing the liability from accounting records and obtaining tax benefits from the United States, sustaining the illusion of solvency for pension funds of those government officers who participate in the scheme, including judges and attorneys and clerks of the court. And all of these steps have been undertaken in a very complex, obscure and indirect way so as to conceal who did what and when.

The defendant requested certain financial disclosures from the plaintiff claiming that the disclosures would persuade the defendant to cease its foreclosure actions provided that money was paid by the plaintiff to the defendant or its privies.

The defendant did not have the typical credit information of the plaintiff, such as a social security number, or date of birth or other banking information that a creditor would normally be expected to have already obtained before a debt obligation was established.

The defendant has used a false or fictitious name in the undertaking of its collection actions.

The defendant has used a name other than the true name of its business, company or organization.

After several written requests, the defendant has refused to identify its owners,

principals or interests it claims to have in the plaintiffs' property. Instead of making these disclosures, defendant has falsely represented that it does have certain legal rights under the trust deed and that it has the right to foreclose of the plaintiff fails or refuses to provide more credit, banking, financial, personal and other identifying information along with agreeing to making regular payments of money to the defendant or its privies.

The defendant failed or refused to provide an accounting of its claim showing any unpaid balance and instead simply demanded money in exchange for not foreclosing and has only provided copies of records that anyone could obtain from the county recorders' office.

The defendant has falsely represented the name of the creditor to whom it alleges the debt is owed.

The defendant has threatened to undertake a foreclosure action against the plaintiff when it has no such rights to do so.

The defendant falsely represented that if the plaintiff failed or refused to cooperate by providing financial, banking, credit, personal and other identifying information along with money, that it would sell the plaintiffs' property at a public auction.

The defendant delivered to the plaintiff written communications that were made to look like or falsely represent documents authorized, issued, or approved by a court, official, or agency of the United States or the state, by using words that would give a false impression of the document's source, authorization, or approval.

The defendant has falsely represented that the plaintiffs' credit accounts were sold to innocent purchases for value.

The Defendant failed to provide the Plaintiff with validation of debt within five business days of contacting him.

The Defendants have undertaken actions to intimidate the plaintiffs by having individuals trespass on their property and take photographs without permission, look through their windows and knock on the door to ask if they can take more photographs

of the backyard and inside of the home for purposes of foreclosure.

The Plaintiffs have suffered actual damages as a result of the defendants' attempted foreclosure of plaintiffs' property, as well as suffering from unjustified and abusive invasions of personal privacy at the Plaintiffs' home and workplace.

Based on these allegations, the consumer alleged violations of §§ 1692e(4) and (5), and 1692g(a) and (b) of the FDCPA.

The foregoing acts and omissions constitute numerous and multiple violations of the FDCPA, including but not limited to each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq.

This is an action for damages exceeding $75,000.

Plaintiffs demand a jury trial.

As a result of each and every violation of the FDCPA, Plaintiff is entitled to any actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs, if any, pursuant to 15 U.S.C. § 1692k(a)(3) from each and every defendant, jointly and severally.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff demands that judgment be entered against each Defendant, jointly and severally, and Plaintiff be awarded damages from each Defendant, as follows:

A. An award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A);

B. An award of costs of litigation and reasonable attorney's fees, if any, pursuant to 15 U.S.C. § 1692k(a)(3);

C. An award of actual damages;

D. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury on all issues so triable as a matter of law.

**COUNT II – COMPLAINT FOR VIOLATIONS OF FAIR DEBT COLLECTION PRACTICES ACT (FDCPA); 15 U.S.C. § 1692 ET SEQ.**

Come now the plaintiffs Larry N . Dorsey and Arlene E. Couch and sue the defendant SELECT PORTFOLIO SERVICES, INC. DBA "SPS" for penalties and actual damages for unfair and deceptive collection practices in violation of the Fair Debt Collection Practices Act, and for other relief as set forth herein.

Plaintiffs have resided at the address known as 2200 Emory Road, Reisterstown, Maryland, Carroll County, for all times material to this complaint, for all times material to this complaint.

The defendant is a corporation doing business in the State of Maryland with its principle place of business at the address of 3815 South West Temple, Salt Lake City, UT 84115-4412, for all times material to this complaint.

Defendant is a debt collector as defined under Title 15 U.S.C. §1692(a). Defendant has undertaken actions that involve the collection of a consumer debt against the plaintiff. The debt collection involves a purported debt for personal, family or household purposes.

Defendant is a debt collector as defined under Title 15 U.S.C. §1692(a)(6) and is not excluded by any provision of what defines a "debt collector" under this statute.

This is a complaint for unfair and deceptive collection practices involving collateral against which the defendants have falsely asserted various rights or claims.

The subject property that has given rise to this complaint is known as a trust deed, and rights thereunder, and land with fixtures on the land that is encumbered by a trust deed recorded in Carroll County, Maryland, a true and correct copy of which is attached.

**PLAIN STATEMENT**

Plaintiff entered into a collateral agreement known as a trust deed involving his property as described herein. This obligation was incurred as a financial obligation that was primarily for family, personal or household purposes. This trust deed did not name or confer any power upon the defendants

At some time after this trust deed was recorded, the defendant began attempting

to foreclose under the terms of the trust deed, as if it were the holder or in control of the note and trust deed.

The plaintiff is the mortgagor in a trust deed that was recorded on or soon after the date of February 20th 2012 in Carroll County, Maryland, in the amount of $388,000. The deed secured the payment of a promissory note ARGENT MORTGAGE COMPANY, LLC, the lender stated on the trust deed. The trustee is Wayne Lee and there were no other parties identified as having an interest in this trust deed or having any rights thereunder, within the instruments, (note and trust deed).

The defendant has somehow acquired the personal and banking information of each of the plaintiff and has used that information for their own personal gain and benefit without any permissible purpose.

Within the previous twelve months, the defendant began sending written communication to the plaintiff stating that it was representing various parties having rights under the same trust deed, or at least plaintiff understood that it was representing parties, including the other defendants, the trustee, a bank, a law firm, etc. who were all claiming some rights in the plaintiffs' property.

Plaintiff asked the defendant to provide verification that these parties it was supposed to have been representing, whose names it was using, or who were aware of its actions. No response was given.

The plaintiff explained that the reason for these requests were, in part, because none of these parties were named in the trust deed referenced by this defendant.

The defendant sent written communication to the plaintiffs stating that it was representing various parties, or at least plaintiff understood that it was representing parties, including the other defendants, the trustee, a bank, a law firm, etc. who were all claiming some rights in the plaintiffs' property.

Plaintiffs asked the defendant to provide verification that these parties she was supposed to have been representing, whose names she was using, were aware of her actions.

The plaintiffs explained that the reason for these requests were, in part, because none of these parties were named in the trust deed referenced by this defendant.

Plaintiffs also asked the defendant to explain how it obtained the personal and

private banking, financial and identifying information of the plaintiffs. The defendant failed or refused to answer these questions, in spite of being advised that she was in violation of the Fair Debt Collection Practices Act and may be subject to penalties and actual damages for continuing to undertake these actions.

The purported debt is not a debt held or collected under the name of the defendant.

The defendant made false representations that it was the holder of a note or promise to pay in which the plaintiff owed the defendant.

The defendant made false representations that it had rights to foreclose against the plaintiffs' property (home) under the provisions of a trust deed that is recorded against the title of the plaintiffs' property in the county where the property is situated.

The defendant requested certain financial disclosures from the plaintiff claiming that the disclosures would persuade the defendant to cease its foreclosure actions provided that money was paid by the plaintiff to the defendant or its privies.

The defendant is utilizing the statutory foreclosure process for this state for the purpose of engaging in a scheme that aims to conceal the identity, source, and destination of illicitly-obtained money, specifically the plaintiffs' promissory note.

First, the defendant acquired a copy, forged or counterfeit version of the plaintiffs' promissory note. The actual steps taken are unclear at this time but there was no valuable consideration given in the process and the original lender or originator either no longer exists or has no records of this instrument.

Second, the defendant is and has been employing a complex scheme, including what has become known recently as "securitization", and then assignments, trusteeships and other counter parties or affiliates such as "serving agents" to obscure who initially received the money.

Finally, the parties involved have been compensated in a list of different ways from this scheme, such as removing the liability from accounting records and obtaining tax benefits from the United States, sustaining the illusion of solvency for pension funds of those government officers who participate in the scheme, including judges and

attorneys and clerks of the court. And all of these steps have been undertaken in a very complex, obscure and indirect way so as to conceal who did what and when. The defendant requested certain financial disclosures from the plaintiff claiming that the disclosures would persuade the defendant to cease its foreclosure actions provided that money was paid by the plaintiff to the defendant or its privies. The defendant did not have the typical credit information of the plaintiff, such as a social security number, or date of birth or other banking information that a creditor would normally be expected to have already obtained before a debt obligation was established. The defendant has used a false or fictitious name in the undertaking of its collection actions. The defendant has used a name other than the true name of its business, company or organization. After several written requests, the defendant has refused to identify its owners, principals or interests it claims to have in the plaintiffs' property. Instead of making these disclosures, defendant has falsely represented that it does have certain legal rights under the trust deed and that it has the right to foreclose of the plaintiff fails or refuses to provide more credit, banking, financial, personal and other identifying information along with agreeing to making regular payments of money to the defendant or its privies. The defendant failed or refused to provide an accounting of its claim showing any unpaid balance and instead simply demanded money in exchange for not foreclosing and has only provided copies of records that anyone could obtain from the county recorders' office. The defendant has falsely represented the name of the creditor to whom it alleges the debt is owed. The defendant has threatened to undertake a foreclosure action against the plaintiff when it has no such rights to do so. The defendant falsely represented that if the plaintiff failed or refused to cooperate by providing financial, banking, credit, personal and other identifying information along with money, that it would sell the plaintiffs' property at a public auction. The defendant delivered to the plaintiff written communications that were made to look like or falsely represent documents authorized, issued, or approved by a court, official, or agency of the United States or the state, by using words that would give a false impression of the document's source, authorization, or approval. The defendant has falsely represented that the plaintiffs' credit accounts were sold to innocent purchases for value. The Defendant failed to provide the Plaintiff with validation of debt within five business days of contacting him. Based on these allegations, the consumer alleged violations of §§ 1692e(4) and (5), and 1692g(a) and (b) of the FDCPA. The foregoing acts and omissions constitute numerous and multiple violations of the FDCPA, including but not limited to each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq. This is an action for damages exceeding $75,000. Plaintiffs demand a jury trial. As a result of each and every violation of the FDCPA, Plaintiff is entitled to any actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs, if any, pursuant to 15 U.S.C. § 1692k(a)(3) from each and every defendant, jointly and severally. REQUEST FOR RELIEF WHEREFORE, Plaintiff demands that judgment be entered against each Defendant, jointly and severally, and Plaintiff be awarded damages from each Defendant, as follows: A. An award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); B. An award of costs of litigation and reasonable attorney's fees, if any, pursuant to 15 U.S.C. § 1692k(a)(3); C. An award of actual damages; D. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury on all issues so triable as a matter of law. COUNT III – COMPLAINT FOR VIOLATIONS OF FAIR DEBT COLLECTION PRACTICES ACT (FDCPA); 15 U.S.C. § 1692 ET SEQ. Come now the plaintiffs LARRY N. DORSEY AND ARLENE E. COUCH and sue the defendant U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION AS TRUSTEE FOR BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2005-AQ2 ASSET-BACKED CERTIFICATES, SERIES 2005-AQ2 for penalties and actual damages for unfair and deceptive collection practices in violation of the Fair Debt Collection Practices Act, and for other relief as set forth herein. Plaintiffs have resided at the address known as 2200 Emory Road, Reisterstown, Maryland, Carroll County, for all times material to this complaint, for all times material to this complaint. The defendant does not exist in any known system of records within the State of Maryland or the United States but is being represented as doing business in the State of Maryland with its principle place of business at the address of 3815 South West Temple, Salt Lake City, UT 84115-4412, for all times material to this complaint. Defendant

is a debt collector as defined under Title 15 U.S.C. §1692(a). Defendant has undertaken actions that involve the collection of a consumer debt against the plaintiff. The debt collection involves a purported debt for personal, family or household purposes. Defendant is a debt collector as defined under Title 15 U.S.C. §1692(a)(6) and is not excluded by any provision of what defines a "debt collector" under this statute. This is a complaint for unfair and deceptive collection practices involving collateral against which the defendants have falsely asserted various rights or claims. The subject property that has given rise to this complaint is known as a trust deed, and rights thereunder, and land with fixtures on the land that is encumbered by a trust deed recorded in Carroll County, Maryland, a true and correct copy of which is attached. PLAIN STATEMENT Plaintiff entered into a collateral agreement known as a trust deed involving his property as described herein. This obligation was incurred as a financial obligation that was primarily for family, personal or household purposes. This trust deed did not name or confer any power upon the defendants At some time after this trust deed was recorded, the defendant began attempting to foreclose under the terms of the trust deed, as if it were the holder or in control of the note and trust deed. The plaintiff is the mortgagor in a trust deed that was recorded on or soon after the date of February 20th 2012 in Carroll County, Maryland, in the amount of $388,000. The deed secured the payment of a promissory note ARGENT MORTGAGE COMPANY, LLC, the lender stated on the trust deed. The trustee is Wayne Lee and there were no other parties identified as having an interest in this trust deed or having any rights thereunder, within the instruments, (note and trust deed). The defendant has somehow acquired the personal and banking information of each of the plaintiff and has used that information for their own personal gain and benefit without any permissible purpose. Within the previous twelve months, the defendant began sending written communication to the plaintiff stating that it was representing various parties having rights under the same trust deed, or at least plaintiff understood that it was representing parties, including the other defendants, the trustee, a bank, a law firm, etc. who were all claiming some rights in the plaintiffs' property. Plaintiff asked the defendant to provide verification that these parties it was supposed to have been representing, whose names it was using, or who were aware of its actions. No response was given. The plaintiff explained that the reason for these requests were, in part, because

none of these parties were named in the trust deed referenced by this defendant.

The defendant sent written communication to the plaintiffs stating that it was representing various parties, or at least plaintiff understood that it was representing parties, including the other defendants, the trustee, a bank, a law firm, etc. who were all claiming some rights in the plaintiffs' property.

Plaintiffs asked the defendant to provide verification that these parties she was supposed to have been representing, whose names she was using, were aware of her actions.

The plaintiffs explained that the reason for these requests were, in part, because none of these parties were named in the trust deed referenced by this defendant.

Plaintiffs also asked the defendant to explain how it obtained the personal and private banking, financial and identifying information of the plaintiffs. The defendant failed or refused to answer these questions, in spite of being advised that she was in violation of the Fair Debt Collection Practices Act and may be subject to penalties and actual damages for continuing to undertake these actions.

The purported debt is not a debt held or collected under the name of the defendant.

The defendant made false representations that it was the holder of a note or promise to pay in which the plaintiff owed the defendant.

The defendant made false representations that it had rights to foreclose against the plaintiffs' property (home) under the provisions of a trust deed that is recorded against the title of the plaintiffs' property in the county where the property is situated.

The defendant requested certain financial disclosures from the plaintiff claiming that the disclosures would persuade the defendant to cease its foreclosure actions provided that money was paid by the plaintiff to the defendant or its privies.

The defendant is utilizing the statutory foreclosure process for this state for the purpose of engaging in a scheme that aims to conceal the identity, source, and destination of illicitly-obtained money, specifically the plaintiffs' promissory note.

First, the defendant acquired a copy, forged or counterfeit version of the plaintiffs' promissory note. The actual steps taken are unclear at this time but there was no

valuable consideration given in the process and the original lender or originator either no longer exists or has no records of this instrument.

Second, the defendant is and has been employing a complex scheme, including what has become known recently as "securitization", and then assignments, trusteeships and other counter parties or affiliates such as "serving agents" to obscure who initially received the money.

Finally, the parties involved have been compensated in a list of different ways from this scheme, such as removing the liability from accounting records and obtaining tax benefits from the United States, sustaining the illusion of solvency for pension funds of those government officers who participate in the scheme, including judges and attorneys and clerks of the court. And all of these steps have been undertaken in a very complex, obscure and indirect way so as to conceal who did what and when.

The defendant requested certain financial disclosures from the plaintiff claiming that the disclosures would persuade the defendant to cease its foreclosure actions provided that money was paid by the plaintiff to the defendant or its privies.

The defendant did not have the typical credit information of the plaintiff, such as a social security number, or date of birth or other banking information that a creditor would normally be expected to have already obtained before a debt obligation was established.

The defendant has used a false or fictitious name in the undertaking of its collection actions.

The defendant has used a name other than the true name of its business, company or organization.

After several written requests, the defendant has refused to identify its owners, principals or interests it claims to have in the plaintiffs' property. Instead of making these disclosures, defendant has falsely represented that it does have certain legal rights under the trust deed and that it has the right to foreclose of the plaintiff fails or refuses to provide more credit, banking, financial, personal and other identifying information along with agreeing to making regular payments of money to the defendant

or its privies.

The defendant failed or refused to provide an accounting of its claim showing any unpaid balance and instead simply demanded money in exchange for not foreclosing and has only provided copies of records that anyone could obtain from the county recorders' office.

The defendant has falsely represented the name of the creditor to whom it alleges the debt is owed.

The defendant has threatened to undertake a foreclosure action against the plaintiff when it has no such rights to do so.

The defendant falsely represented that if the plaintiff failed or refused to cooperate by providing financial, banking, credit, personal and other identifying information along with money, that it would sell the plaintiffs' property at a public auction.

The defendant delivered to the plaintiff written communications that were made to look like or falsely represent documents authorized, issued, or approved by a court, official, or agency of the United States or the state, by using words that would give a false impression of the document's source, authorization, or approval.

The defendant has falsely represented that the plaintiffs' credit accounts were sold to innocent purchases for value.

The Defendant failed to provide the Plaintiff with validation of debt within five business days of contacting him.

Based on these allegations, the consumer alleged violations of §§ 1692e(4) and (5), and 1692g(a) and (b) of the FDCPA.

The foregoing acts and omissions constitute numerous and multiple violations of the FDCPA, including but not limited to each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq.

This is an action for damages exceeding $75,000.

Plaintiffs demand a jury trial.

As a result of each and every violation of the FDCPA, Plaintiff is entitled to any

actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs, if any, pursuant to 15 U.S.C. § 1692k(a)(3) from each and every defendant, jointly and severally.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff demands that judgment be entered against each Defendant, jointly and severally, and Plaintiff be awarded damages from each Defendant, as follows:

A. An award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A);

B. An award of costs of litigation and reasonable attorney's fees, if any, pursuant to 15 U.S.C. § 1692k(a)(3);

C. An award of actual damages;

D. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury on all issues so triable as a matter of law.

**COMPLAINT FOR IDENTITY THEFT**

Come now the plaintiffs Larry N. Dorsey and Arlene E. Couch sue the defendant JAMES E. CLARKE, RENEE DYSON, BRIAN THOMAS, ERIN M. COHEN, HUGH J. GREEN PATRICK M. A. DECKER, DBA "SUBSTITUTE TRUSTEES" in the following legal action to protect a private civil right and to compel a civil remedy for damages resulting from the theft of the plaintiffs' personal, financial, banking and identifying information, and alleges the following:

**JURISDICTION**

This is an action at law and this court has original jurisdiction pursuant to Article III, Section 2 of the United States Constitution and Title 28 U.S.C. §1331.

This is a complaint for damages that exceeds $75,000.

There is a diversity of citizenship between the plaintiff and defendant.

**VENUE**

Plaintiffs have resided at the address known as 2200 Emory Road, Reisterstown, Maryland, Carroll County, for all times material to this complaint, for all times material to this complaint.

The defendant is a group of individuals doing business as "Substitute Trustees" in the State of Maryland with its principle place of business at the address of 1602 Village Market Blvd SE #310, Leesburg, VA 20175, for all times material to this complaint.

**PLAIN STATEMENT**

The plaintiffs are the mortgagor in a trust deed that was recorded on or soon after the date of February 20th 2012 in Carroll County, Maryland, in the amount of $388,000. The deed secured the payment of a promissory note ARGENT MORTGAGE COMPANY, LLC, the lender stated on the trust deed. The trustee is Wayne Lee and there were no other parties identified as having an interest in this trust deed or having any rights thereunder, within the instruments, (note and trust deed).

This complaint concerns the defendant's actions and conduct whereby it acquired the plaintiffs' credit and financial information, at least enough to make it appear as if the defendant was working with the lender in the trust deed. The defendant then proceeded to send written communications to the plaintiff stating that it now either had rights to foreclose under the trust deed or that it was working with other parties who had rights to foreclose, unless the plaintiff made more financial disclosures and modified payment arrangements to the defendant.

The defendant pretended to help the plaintiff and lead him into making more and more financial disclosures and then either discontinued the communication after it obtained what it wanted, or created a situation to make it appear as if the plaintiff did not qualify, but then never returned or certified the destruction of the records and information obtain about the plaintiff.

**STATEMENTS OF FACT AND DEFINITIONS**

The term "identity theft" includes the act of stealing one's mail or looking through one's private home and/or commercial business trash. Sometimes the theft is undertaken by simply communicating with the victim, such as via mail, telephone and sometimes during service calls such as a plumber casing a house and then giving the

information he discovers to a third party for money.

Sometimes identity thieves steal your wallet or purse, and sometimes they only take the information in your wallet or purse. They will also fraudulently pose as potential landlords, tax collector, banking organizations, attorneys, prospective or current employers, or creditors to try to obtain your personal data under false pretenses. The methods of identity theft have become known by the new term "phishing".

The term "phishing" is defined as someone is tricked into giving up personal information, typically by sending out what looks like official communications from banks, credit unions, or credit card companies asking to confirm private information including personal identification numbers and other critical identifiers. Some go so far as to file a "change of address" form to divert your mail to a drop or Post Office Box address.

The most recent example comes from the expanding trust deed foreclosure segment of the fiance market; whereby, individuals gather together public records such as trust deeds and create promissory notes and copy signatures from the trust deeds to the notes and use those copies along with other records created by software, to commission attorneys to begin a foreclosure action. The attorneys then contact a homeowner and tell him that his trust deed is in default, and usually claim some unknown third party to whom it's in default, and that to avoid foreclosure, he will have to provide financial disclosures for a "loan modification'. Out of fear, the unsuspecting homeowner provides this information without any conditions, such as never being advised of the perpetrator's document retention policy or what the financial information will be used for. Many organizations are able to obtain credit information about the homeowner simply by paying a membership fee to Equifax. This information is then used to obtain more information. In probably every case, this financial information is sold or traded to third parties and utilized in making false reports to the IRS, such as on Form 1099.

Identifying information also includes a person's name, telephone number, date of birth, mother's maiden name, driver's license number, state identification number, or any other piece of information that can identify a person.

**COUNT IV – COMPLAINT FOR IDENTITY THEFT**

Come now the plaintiffs Larry N. Dorsey and Arlene E. Couch sue the defendant

JAMES E. CLARKE, RENEE DYSON, BRIAN THOMAS, ERIN M. COHEN, HUGH J. GREEN PATRICK M. A. DECKER, DBA "SUBSTITUTE TRUSTEES" in the following legal action to protect a private civil right and to compel a civil remedy for damages resulting from the theft of the plaintiffs' personal, financial, banking and identifying information, and alleges the following:

The plaintiffs re-allege the foregoing and incorporate each statement herein.

Jurisdiction and venue are proper and this complaint is an action at law and is properly before this court.

Plaintiffs' "private information", as the term is used in this complaint and accepted commonly in our modern community, includes but is not limited to the likeness of the plaintiff, and his personal identifying information, banking, financial and credit information, and any other personal information that is or can be used by the plaintiff for his own personal and professional benefits.

Plaintiffs have the right to keep his private information and records from third parties, and has a right to rely upon the third party to only request such information for legitimate and legal purposes. The plaintiffs' private records include the information appearing on his birth certificate, tax records, banking records, financial and other personal information and information that identifies the plaintiff, such as his likeness, photographs, videos, and other records which have not been deliberately published to third parties.

Beginning from around January of 2014 and continuing through the present day, the plaintiffs were contacted by the defendant and other organizations affiliated with, and that appeared to be working for the defendant. Plaintiffs have reason to believe that these organizations where owned and operated by the defendant and being used to conceal the identities of the defendant. These organizations threatened the plaintiffs with the taking their home and money unless they provided certain financial, personal, banking and identifying information to the defendant. Copies of these written communications are attached as Exhibit B.

The defendant also made inquiries of the plaintiff credit report but did not have a permissible purpose.

The defendant obtained records from the public domain that pertain to the plaintiffs' property and rights to his property, and then use these records to create additional records and convince the personnel working in the court system to participate in a public auction of the plaintiffs' home.

The defendant has deliberately and willfully, falsely presented itself and impersonated itself to the plaintiff as another person to obtain the plaintiffs' property for purposes not permitted by law or agreement.

The defendant had an affirmative duty to disclose the purposes for which it coerced plaintiffs' banking, personal, financial and identifying information.

The defendant's actions were deliberate and will and negligent and careless. The plaintiff was never provided with a disclosure of the defendant's document retention policy or an explanation of the purposes for which the plaintiffs' private information would be used.

The plaintiff requested a copy of the defendant's document retention policy but this request was ignored.

The defendant intentionally and willfully violated the plaintiffs' rights to privacy and to keep his private and personal records private.

The defendant engaged in communications with the plaintiff and deceived him into disclosing his private information. The defendant accomplished this by using the information already available to the defendant in the public domain to make it appear as if the defendant had some legal rights to obtain more of the plaintiffs' private information, when the defendant did not have such rights.

After obtaining plaintiffs' private information, defendant used this information for its own financial gain and ulterior and undisclosed purposes, and for purposes not permitted by law or by the plaintiff. The defendant has or intends to file claims with the Internal Revenue Service, such as Form 1099, using the plaintiffs' identifying information.

The defendant has or intends to use the plaintiffs' private information to sell or trade with third parties for the mutual benefit of these parties, exclusive of contrary to the interests of the plaintiff.

The defendant used this information to sell the plaintiffs' property at a public auction in order to further give the appearance that it was legal when it was not.

Since the date of December 15th 2013, and to the best of plaintiffs' knowledge, the defendant has been in possession of plaintiffs' private information, and without the consent of the plaintiff and without legal authority.

## DAMAGES

The plaintiffs have suffered damages as a direct and proximate result of the defendant's actions and failures to act.

The plaintiffs have suffered the loss of the actual fair market value of his home because the defendant has been encumbering the plaintiffs' property, before, during and following the foreclosure thereof. The actual damages are: 1. The fair market value of plaintiffs' property in the amount of $256,000. 2. The loss of the money deposited with the lender identified on the trust deed or trust deed lien in the amount of $388,000. 3. Costs and attorney fees associated with defending against the foreclosure process in the amount of $7,800 and 4. Unauthorized use and retention of plaintiffs' personal, banking, financial and identifying information resulting in damages that have not yet fully been able to be calculated by that are estimated to exceed $500,000 as of this date.

WHEREFORE plaintiff demands judgment against the defendant in the aggregate amount of damages alleged in the complaint of $1,151,800, together with other relief this court deems appropriate.

## COMPLAINT FOR IDENTITY THEFT

Come now the plaintiffs Larry N. Dorsey and Arlene E. Couch and sue the defendant SELECT PORTFOLIO SERVICES, INC. DBA "SPS" in the following legal action to protect a private civil right and to compel a civil remedy for damages resulting from the theft of the plaintiffs' personal, financial, banking and identifying information, and alleges the following:

## JURISDICTION

This is an action at law and this court has original jurisdiction pursuant to Article III, Section 2 of the United States Constitution and Title 28 U.S.C. §1331.

This is a complaint for damages that exceeds $75,000.

There is a diversity of citizenship between the plaintiff and defendant.

## VENUE

Plaintiffs have resided at the address known as 2200 Emory Road, Reisterstown, Maryland, Carroll County, for all times material to this complaint, for all times material to this complaint.

The defendant is a corporation doing business in the State of Maryland with its principle place of business at the address of 3815 South West Temple, Salt Lake City, UT 84115-4412, for all times material to this complaint.

## PLAIN STATEMENT

The plaintiff is the mortgagor in a trust deed that was recorded on or soon after the date of February 20th 2012 in Carroll County, Maryland, in the amount of $388,000. The deed secured the payment of a promissory note ARGENT MORTGAGE COMPANY, LLC, the lender stated on the trust deed. The trustee is Wayne Lee and there were no other parties identified as having an interest in this trust deed or having any rights thereunder, within the instruments, (note and trust deed).

This complaint concerns the defendant's actions and conduct whereby it acquired the plaintiffs' credit and financial information, at least enough to make it appear as if the defendant was working with the lender in the trust deed. The defendant then proceeded to send written communications to the plaintiff stating that it now either had rights to foreclose under the trust deed or that it was working with other parties who had rights to foreclose, unless the plaintiff made more financial disclosures and modified payment arrangements to the defendant.

The defendant pretended to help the plaintiff and lead him into making more and more financial disclosures and then either discontinued the communication after it obtained what it wanted, or created a situation to make it appear as if the plaintiff did not qualify, but then never returned or certified the destruction of the records and information obtain about the plaintiff.

## STATEMENTS OF FACT AND DEFINITIONS

The term "identity theft" includes the act of stealing one's mail or looking through

one's private home and/or commercial business trash. Sometimes the theft is undertaken by simply communicating with the victim, such as via mail, telephone and sometimes during service calls such as a plumber casing a house and then giving the information he discovers to a third party for money.

Sometimes identity thieves steal your wallet or purse, and sometimes they only take the information in your wallet or purse. They will also fraudulently pose as potential landlords, tax collector, banking organizations, attorneys, prospective or current employers, or creditors to try to obtain your personal data under false pretenses. The methods of identity theft have become known by the new term “phishing”.

The term “phishing” is defined as someone is tricked into giving up personal information, typically by sending out what looks like official communications from banks, credit unions, or credit card companies asking to confirm private information including personal identification numbers and other critical identifiers. Some go so far as to file a "change of address" form to divert your mail to a drop or Post Office Box address.

The most recent example comes from the expanding trust deed foreclosure segment of the fiance market; whereby, individuals gather together public records such as trust deeds and create promissory notes and copy signatures from the trust deeds to the notes and use those copies along with other records created by software, to commission attorneys to begin a foreclosure action. The attorneys then contact a homeowner and tell him that his trust deed is in default, and usually claim some unknown third party to whom it's in default, and that to avoid foreclosure, he will have to provide financial disclosures for a “loan modification'. Out of fear, the unsuspecting homeowner provides this information without any conditions, such as never being advised of the perpetrator's document retention policy or what the financial information will be used for. Many organizations are able to obtain credit information about the homeowner simply by paying a membership fee to Equifax. This information is then used to obtain more information. In probably every case, this financial information is sold or traded to third parties and utilized in making false reports to the IRS, such as on Form 1099.

Identifying information also includes a person's name, telephone number, date of birth, mother's maiden name, driver's license number, state identification number, or

any other piece of information that can identify a person.

**COUNT V – COMPLAINT FOR IDENTITY THEFT**

Come now the plaintiffs Larry N. Dorsey and Arlene E. Couch and sue the defendant SELECT PORTFOLIO SERVICES, INC. DBA "SPS" in the following legal action to protect a private civil right and to compel a civil remedy for damages resulting from the theft of the plaintiffs' personal, financial, banking and identifying information, and alleges the following:

The plaintiffs re-allege the foregoing and incorporate each statement herein.

Jurisdiction and venue are proper and this complaint is an action at law and is properly before this court.

Plaintiffs' "private information", as the term is used in this complaint and accepted commonly in our modern community, includes but is not limited to the likeness of the plaintiff, and his personal identifying information, banking, financial and credit information, and any other personal information that is or can be used by the plaintiff for his own personal and professional benefits.

Plaintiffs have the right to keep his private information and records from third parties, and has a right to rely upon the third party to only request such information for legitimate and legal purposes. The plaintiffs' private records include the information appearing on his birth certificate, tax records, banking records, financial and other personal information and information that identifies the plaintiff, such as his likeness, photographs, videos, and other records which have not been deliberately published to third parties.

Beginning from around January of 2014 and continuing through the present day, the plaintiffs were contacted by the defendant and other organizations affiliated with, and that appeared to be working for the defendant. Plaintiffs have reason to believe that these organizations where owned and operated by the defendant and being used to conceal the identities of the defendant. These organizations threatened the plaintiffs with the taking their home and money unless they provided certain financial, personal, banking and identifying information to the defendant. Copies of these written communications are attached as Exhibit B.

The defendant also made inquiries of the plaintiff credit report but did not have a permissible purpose.

The defendant obtained records from the public domain that pertain to the plaintiffs' property and rights to his property, and then use these records to create additional records and convince the personnel working in the court system to participate in a public auction of the plaintiffs' home.

The defendant has deliberately and willfully, falsely presented itself and impersonated itself to the plaintiff as another person to obtain the plaintiffs' property for purposes not permitted by law or agreement.

The defendant had an affirmative duty to disclose the purposes for which it coerced plaintiffs' banking, personal, financial and identifying information.

The defendant's actions were deliberate and will and negligent and careless. The plaintiff was never provided with a disclosure of the defendant's document retention policy or an explanation of the purposes for which the plaintiffs' private information would be used.

The plaintiff requested a copy of the defendant's document retention policy but this request was ignored.

The defendant intentionally and willfully violated the plaintiffs' rights to privacy and to keep his private and personal records private.

The defendant engaged in communications with the plaintiff and deceived him into disclosing his private information. The defendant accomplished this by using the information already available to the defendant in the public domain to make it appear as if the defendant had some legal rights to obtain more of the plaintiffs' private information, when the defendant did not have such rights.

After obtaining plaintiffs' private information, defendant used this information for its own financial gain and ulterior and undisclosed purposes, and for purposes not permitted by law or by the plaintiff. The defendant has or intends to file claims with the Internal Revenue Service, such as Form 1099, using the plaintiffs' identifying information.

The defendant has or intends to use the plaintiffs' private information to sell or

trade with third parties for the mutual benefit of these parties, exclusive of contrary to the interests of the plaintiff.

The defendant used this information to sell the plaintiffs' property at a public auction in order to further give the appearance that it was legal when it was not.

Since the date of January 12th 2015, and to the best of plaintiffs' knowledge, the defendant has been in possession of plaintiffs' private information, and without the consent of the plaintiff and without legal authority.

**DAMAGES**

The plaintiffs have suffered damages as a direct and proximate result of the defendant's actions and failures to act.

The plaintiffs have suffered the loss of the actual fair market value of his home because the defendant has been encumbering the plaintiffs' property, before, during and following the foreclosure thereof. The actual damages are: 1. The fair market value of plaintiffs' property in the amount of $256,000. 2. The loss of the money deposited with the lender identified on the trust deed or trust deed lien in the amount of $388,000. 3. Costs and attorney fees associated with defending against the foreclosure process in the amount of $7,800 and 4. Unauthorized use and retention of plaintiffs' personal, banking, financial and identifying information resulting in damages that have not yet fully been able to be calculated by that are estimated to exceed $500,000 as of this date.

WHEREFORE plaintiff demands judgment against the defendant in the aggregate amount of damages alleged in the complaint of $1,151,800, together with other relief this court deems appropriate.

**COMPLAINT FOR IDENTITY THEFT**

Come now the plaintiffs Larry N. Dorsey and Arlene E. Couch and sue the defendant U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION AS TRUSTEE FOR BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2005-AQ2 ASSET-BACKED CERTIFICATES, SERIES 2005-AQ2 in the following legal action to

protect a private civil right and to compel a civil remedy for damages resulting from the theft of the plaintiffs' personal, financial, banking and identifying information, and alleges the following:

## JURISDICTION

This is an action at law and this court has original jurisdiction pursuant to Article III, Section 2 of the United States Constitution and Title 28 U.S.C. §1331.

This is a complaint for damages that exceeds $75,000.

There is a diversity of citizenship between the plaintiff and defendant.

## VENUE

Plaintiffs have resided at the address known as 2200 Emory Road, Reisterstown, Maryland, Carroll County, for all times material to this complaint, for all times material to this complaint.

The defendant does not exist in any known system of records within the State of Maryland or the United States but is being represented as doing business in the State of Maryland with its principle place of business at the address of 3815 South West Temple, Salt Lake City, UT 84115-4412, for all times material to this complaint.

**PLAIN STATEMENT**

The plaintiff is the mortgagor in a trust deed that was recorded on or soon after the date of February 20th 2012 in Carroll County, Maryland, in the amount of $388,000. The deed secured the payment of a promissory note ARGENT MORTGAGE COMPANY, LLC, the lender stated on the trust deed. The trustee is Wayne Lee and there were no other parties identified as having an interest in this trust deed or having any rights thereunder, within the instruments, (note and trust deed).

This complaint concerns the defendant's actions and conduct whereby it acquired the plaintiffs' credit and financial information, at least enough to make it appear as if the defendant was working with the lender in the trust deed. The defendant then proceeded to send written communications to the plaintiff stating that it now either had rights to foreclose under the trust deed or that it was working with other parties who had rights to foreclose, unless the plaintiff made more financial disclosures and modified payment arrangements to the defendant.

The defendant pretended to help the plaintiff and lead him into making more and more financial disclosures and then either discontinued the communication after it obtained what it wanted, or created a situation to make it appear as if the plaintiff did not qualify, but then never returned or certified the destruction of the records and information obtain about the plaintiff.

## STATEMENTS OF FACT AND DEFINITIONS

The term “identity theft” includes the act of stealing one's mail or looking through one's private home and/or commercial business trash. Sometimes the theft is undertaken by simply communicating with the victim, such as via mail, telephone and sometimes during service calls such as a plumber casing a house and then giving the information he discovers to a third party for money.

Sometimes identity thieves steal your wallet or purse, and sometimes they only take the information in your wallet or purse. They will also fraudulently pose as potential landlords, tax collector, banking organizations, attorneys, prospective or current employers, or creditors to try to obtain your personal data under false pretenses. The methods of identity theft have become known by the new term “phishing”.

The term “phishing” is defined as someone is tricked into giving up personal information, typically by sending out what looks like official communications from banks, credit unions, or credit card companies asking to confirm private information including personal identification numbers and other critical identifiers. Some go so far as to file a "change of address" form to divert your mail to a drop or Post Office Box address.

The most recent example comes from the expanding trust deed foreclosure segment of the fiance market; whereby, individuals gather together public records such as trust deeds and create promissory notes and copy signatures from the trust deeds to the notes and use those copies along with other records created by software, to commission attorneys to begin a foreclosure action. The attorneys then contact a homeowner and tell him that his trust deed is in default, and usually claim some unknown third party to whom it's in default, and that to avoid foreclosure, he will have to provide financial disclosures for a “loan modification'. Out of fear, the unsuspecting homeowner provides this information without any conditions, such as never being advised of the perpetrator's document retention policy or what the financial information

will be used for. Many organizations are able to obtain credit information about the homeowner simply by paying a membership fee to Equifax. This information is then used to obtain more information. In probably every case, this financial information is sold or traded to third parties and utilized in making false reports to the IRS, such as on Form 1099.

Identifying information also includes a person's name, telephone number, date of birth, mother's maiden name, driver's license number, state identification number, or any other piece of information that can identify a person.

**COUNT VI – COMPLAINT FOR IDENTITY THEFT**

Come now the plaintiffs Larry N. Dorsey and Arlene E. Couch and sue the defendant U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION AS TRUSTEE FOR BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2005-AQ2 ASSET-BACKED CERTIFICATES, SERIES 2005-AQ2 in the following legal action to protect a private civil right and to compel a civil remedy for damages resulting from the theft of the plaintiffs' personal, financial, banking and identifying information, and alleges the following:

The plaintiffs re-allege the foregoing and incorporate each statement herein.

Jurisdiction and venue are proper and this complaint is an action at law and is properly before this court.

Plaintiffs' "private information", as the term is used in this complaint and accepted commonly in our modern community, includes but is not limited to the likeness of the plaintiff, and his personal identifying information, banking, financial and credit information, and any other personal information that is or can be used by the plaintiff for his own personal and professional benefits.

Plaintiffs have the right to keep his private information and records from third parties, and has a right to rely upon the third party to only request such information for legitimate and legal purposes. The plaintiffs' private records include the information appearing on his birth certificate, tax records, banking records, financial and other

personal information and information that identifies the plaintiff, such as his likeness, photographs, videos, and other records which have not been deliberately published to third parties.

Beginning from around January of 2014 and continuing through the present day, the plaintiffs were contacted by the defendant and other organizations affiliated with, and that appeared to be working for the defendant. Plaintiffs have reason to believe that these organizations where owned and operated by the defendant and being used to conceal the identities of the defendant. These organizations threatened the plaintiffs with the taking their home and money unless they provided certain financial, personal, banking and identifying information to the defendant. Copies of these written communications are attached as Exhibit B.

The defendant also made inquiries of the plaintiff credit report but did not have a permissible purpose.

The defendant obtained records from the public domain that pertain to the plaintiffs' property and rights to his property, and then use these records to create additional records and convince the personnel working in the court system to participate in a public auction of the plaintiffs' home.

The defendant has deliberately and willfully, falsely presented itself and impersonated itself to the plaintiff as another person to obtain the plaintiffs' property for purposes not permitted by law or agreement.

The defendant had an affirmative duty to disclose the purposes for which it coerced plaintiffs' banking, personal, financial and identifying information.

The defendant's actions were deliberate and will and negligent and careless. The plaintiff was never provided with a disclosure of the defendant's document retention policy or an explanation of the purposes for which the plaintiffs' private information would be used.

The plaintiff requested a copy of the defendant's document retention policy but this request was ignored.

The defendant intentionally and willfully violated the plaintiffs' rights to privacy and to keep his private and personal records private.

The defendant engaged in communications with the plaintiff and deceived him into disclosing his private information. The defendant accomplished this by using the information already available to the defendant in the public domain to make it appear as if the defendant had some legal rights to obtain more of the plaintiffs' private information, when the defendant did not have such rights.

After obtaining plaintiffs' private information, defendant used this information for its own financial gain and ulterior and undisclosed purposes, and for purposes not permitted by law or by the plaintiff. The defendant has or intends to file claims with the Internal Revenue Service, such as Form 1099, using the plaintiffs' identifying information.

The defendant has or intends to use the plaintiffs' private information to sell or trade with third parties for the mutual benefit of these parties, exclusive of contrary to the interests of the plaintiff.

The defendant used this information to sell the plaintiffs' property at a public auction in order to further give the appearance that it was legal when it was not.

Since the date of January 12th 2014, and to the best of plaintiffs' knowledge, the defendant has been in possession of plaintiffs' private information, and without the consent of the plaintiff and without legal authority.

**DAMAGES**

The plaintiffs have suffered damages as a direct and proximate result of the defendant's actions and failures to act.

The plaintiffs have suffered the loss of the actual fair market value of his home because the defendant has been encumbering the plaintiffs' property, before, during and following the foreclosure thereof. The actual damages are: 1. The fair market value of plaintiffs' property in the amount of $256,000. 2. The loss of the money deposited with the lender identified on the trust deed or trust deed lien in the amount of $388,000. 3. Costs and attorney fees associated with defending against the foreclosure process in the amount of $7,800 and 4. Unauthorized use and retention of plaintiffs' personal, banking, financial and identifying information resulting in damages that have not yet fully been able to be calculated by that are estimated to exceed

$500,000 as of this date.

WHEREFORE plaintiff demands judgment against the defendant in the aggregate amount of damages alleged in the complaint of $1,151,800, together with other relief this court deems appropriate.

## COMPLAINT FOR DAMAGES – 15 U.S.C. §1635

Come now the plaintiffs Larry N. Dorsey and Arlene E. Couch and sues the defendant U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION AS TRUSTEE FOR BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2005-AQ2 ASSET-BACKED CERTIFICATES, SERIES 2005-AQ2 in the following legal action to protect a private civil right and to compel a civil remedy for damages resulting from violations of Title 15 U.S.C. §§1635 and 1640, and alleges the following:

## JURISDICTION

This is an action at law and this court has original jurisdiction pursuant to Article III, Section 2 of the United States Constitution and Title 28 U.S.C. §1331 and 15 U.S.C. §§1635 and 1640.

This is a complaint for damages that exceeds $75,000.

There is a diversity of citizenship between the plaintiff and defendant.

## VENUE

Plaintiffs have resided at the address known as 2200 Emory Road, Reisterstown, Maryland, Carroll County, for all times material to this complaint, for all times material to this complaint.

The defendant does not exist in any known system of records within the State of Maryland or the United States but is being represented as doing business in the State of Maryland with its principle place of business at the address of 3815 South West Temple, Salt Lake City, UT 84115-4412, for all times material to this complaint.

## PLAIN STATEMENT

The plaintiff is the mortgagor in a trust deed that was recorded on or soon after

the date of February 20th 2012 in Carroll County, Maryland, in the amount of $388,000. The deed secured the payment of a promissory note ARGENT MORTGAGE COMPANY, LLC, the lender stated on the trust deed. The trustee is Wayne Lee and there were no other parties identified as having an interest in this trust deed or having any rights thereunder, within the instruments, (note and trust deed).

The defendant sent written communications to the plaintiff stating that it had rights under a trust deed recorded against the plaintiffs' property. The plaintiff served the defendant with a notice to rescind and the defendant failed to sue and re-establish the debt.

The defendant subsequently ignored the notice and continued in its efforts to foreclose.

The plaintiff is now suing for damages resulting therefrom.

**COUNT VII – COMPLAINT FOR DAMAGES – 15 U.S.C. §1635**

Come now the plaintiffs Larry N. Dorsey and Arlene E. Couch and sues the defendant U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION AS TRUSTEE FOR BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2005-AQ2 ASSET-BACKED CERTIFICATES, SERIES 2005-AQ2 in the following legal action to protect a private civil right and to compel a civil remedy for damages resulting from violations of Title 15 U.S.C. §§1635 and 1640, and alleges the following:

The plaintiffs re-allege the foregoing and incorporate each statement herein.

Jurisdiction and venue are proper and this complaint is an action at law and is properly before this court.

The plaintiff and defendant were parties to a consumer credit transaction that existed or was consummated on or after September 30, 1995.

The defendant is a creditor within the meaning of 15 U.S.C. §§1601 and 1635 et seq.

The defendant recently began attempting to foreclose as if it had rights under this

trust deed agreement. The plaintiff responded accordingly, as if the defendant had such rights, and also, as if the defendant had the same liabilities as set forth under the Truth and Lending Act, Title 15 U.S.C. §§1635 and 1640.

The creditor failed to provide the plaintiff with the appropriate form of written notice published and adopted under the provisions of the Truth in Lending Act.

The creditor failed to provide the plaintiff with a comparable written notice of the rights of the plaintiff, that was properly completed by the creditor, and otherwise complied with all statutory requirements regarding the notice.

The plaintiff notified the defendant of his right to rescind.

The plaintiff served a notice to rescind upon the defendant on the date of ____, a true and correct copy of this notice is attached as Exhibit C.

The defendant ignored the plaintiff and failed to respond to the notice to rescind by failing to sue the plaintiff and re-establish what it claimed to be the debt under the trust deed and promissory note.

As of the date of ____, which is or exceeds twenty days following the notice to rescind, the trust deed and note were void and did not exist; however, the defendant continued to act as if the note and trust deed were enforceable and subsequently foreclosed upon the plaintiffs' property.

The defendant had a duty to either sue the plaintiff to re-establish what it claimed to be the debt or return the plaintiffs' money or property within twenty days of receiving the notice to rescind.

The defendant failed to return the note, money or property paid.

The plaintiff served the defendant with a notice of default and intent to sue for its failure to properly respond to the notice to rescind, a true and correct copy is attached as Exhibit C.

The plaintiff was unable to tender the property or money received because of the defendant's failure to comply and no measures to protect or guarantee that such tender of property would cause the defendant to comply with its obligations.

The plaintiffs have given timely notice to the defendant within applicable statute

of limitations of the Truth in Lending Act in filing this claim

The defendant will not suffer prejudice because of this complaint.

The plaintiffs have acted reasonably and in good faith regarding the events leading up to the commencement of this action.

The plaintiff was actively misled by the defendant about the cause of action or was extraordinarily prevented from asserting his rights.

Plaintiff demands a jury trial.

**DAMAGES**

The plaintiffs have suffered damages as a direct and proximate result of the defendant's actions and failures to act. Non-compliance is a violation of the Truth in Lending Act which gives rise to a claim for actual and statutory damages under 15 U.S.C. §1640.

The plaintiffs have suffered the loss of the actual fair market value of his home because the defendant has failed or refused to sue the plaintiff and reestablish the purported debt that was rescinded by the plaintiff prior to the commencement of this complaint.

The actual damages are: 1. The fair market value of plaintiffs' property in the amount of $256,000. 2. The loss of the money deposited with the lender identified on the trust deed or trust deed lien in the amount of $388,000. 3. Costs and attorney fees associated with this action and defending against the foreclosure process in the amount of $7,800.

WHEREFORE plaintiff demands judgment against the defendant in the aggregate amount of damages alleged in the complaint of $651,800, together with other relief this court deems appropriate.

**COMPLAINT FOR BREACH OF CONTRACT**

**AND LIQUIDATED DAMAGES – COUNT VIII**

Come now the plaintiffs Larry N. Dorsey and Arlene E. Couch and sue the defendant JAMES E. CLARKE, RENEE DYSON, BRIAN THOMAS, ERIN M. COHEN, HUGH J. GREEN PATRICK M. A. DECKER, DBA "SUBSTITUTE TRUSTEES" in the

following legal action to protect a private civil right and to compel a civil remedy for liquidated damages resulting from the breach of a license agreement, and alleges the following:

## JURISDICTION

This is an action at law and this court has original jurisdiction pursuant to Article III, Section 2 of the United States Constitution and Title 28 U.S.C. §1331.

This is a complaint for damages that exceeds $75,000.

There is a diversity of citizenship between the plaintiff and defendant.

## VENUE

Plaintiffs have resided at the address known as 2200 Emory Road, Reisterstown, Maryland, Carroll County, for all times material to this complaint, for all times material to this complaint.

The defendant is a group of individuals doing business as "Substitute Trustees" in the State of Maryland with its principle place of business at the address of 1602 Village Market Blvd SE #310, Leesburg, VA 20175, for all times material to this complaint.

## PLAIN STATEMENT

The defendant entered into a license agreement with the plaintiff which included liquidated damages for any breach or material breach thereof.

The defendant has breached this agreement and the plaintiffs have suffered damages thereby and now seeks a judgment against the defendant for these damages.

## STATEMENTS OF FACT AND DEFINITIONS AND ALLEGATIONS

The abbreviation "XBT" is defined in the agreement upon which this complaint is based.

The abbreviation "Au" is defined in the agreement upon which this complaint is based.

On the date of November 11th 2015, the defendant entered into a license agreement with the plaintiff for the use of plaintiffs' identifying information, including

credit file, bank accounts, financial information, tax records and other personal and identifying information such as video-graphic and audio recordings of the plaintiff, and other terms set forth in the agreement, a true and correct copy of which is attached.

The plaintiff alleges the terms and provisions of the exhibited agreement, identified as the "Data Retention Policy" and alleges and incorporates each statement therein into this complaint.

The defendant was given a period of time to notice the plaintiff of its intent to be excluded from the license terms, under which the defendant was obligated to purge its records and databases of any and all information pertaining to the plaintiff and/or provide a certificate of destruction of any records or information it could not return. These terms are more fully set forth in the attached Exhibit A "DATA RETENTION POLICY".

The defendant has failed to comply with the "opt-out" provisions that would have excluded itself from the obligations under the license agreement.

The defendant is currently in breach of the license agreement for using and benefiting from the plaintiffs' identifying information as defined in the agreement.

The defendant is liable to the plaintiff for liquidated damages as set forth in the agreement.

As of this day, the defendant is liable to the plaintiff in the amount or equivalent of 2.46 ounces of gold (Au) or its equivalent in Bitcoin (XBT), for each day beginning from November 12th 2015 and continuing through until the current day.

WHEREFORE the plaintiff demands judgment for liquidated damages in the amount of 2.46 ounces of gold (Au) or its equivalent in Bitcoin (XBT), for each day beginning from November 12th 2015 and continuing through until the current day, plus court costs, attorney fees and for other relief as this court deems appropriate.

**COMPLAINT FOR BREACH OF CONTRACT**

**AND LIQUIDATED DAMAGES – COUNT IX**

Come now the plaintiffs Larry N. Dorsey and Arlene E. Couch and sue the defendant SELECT PORTFOLIO SERVICES, INC DBA "SPS" in the following legal

action to protect a private civil right and to compel a civil remedy for liquidated damages resulting from the breach of a license agreement, and alleges the following:

**JURISDICTION**

This is an action at law and this court has original jurisdiction pursuant to Article III, Section 2 of the United States Constitution and Title 28 U.S.C. §1331.

This is a complaint for damages that exceeds $75,000.

There is a diversity of citizenship between the plaintiff and defendant.

**VENUE**

Plaintiffs have resided at the address known as 2200 Emory Road, Reisterstown, Maryland, Carroll County, for all times material to this complaint, for all times material to this complaint.

The defendant is a corporation doing business in the State of Maryland with its principle place of business at the address of 3815 South West Temple, Salt Lake City, UT 84115-4412, for all times material to this complaint.

**PLAIN STATEMENT**

The defendant entered into a license agreement with the plaintiff which included liquidated damages for any breach or material breach thereof.

The defendant has breached this agreement and the plaintiffs have suffered damages thereby and now seeks a judgment against the defendant for these damages.

**STATEMENTS OF FACT AND DEFINITIONS AND ALLEGATIONS**

The abbreviation "XBT" is defined in the agreement upon which this complaint is based.

The abbreviation "Au" is defined in the agreement upon which this complaint is based.

On the date of November 11th 2015, the defendant entered into a license agreement with the plaintiff for the use of plaintiffs' identifying information, including credit file, bank accounts, financial information, tax records and other personal and identifying information such as video-graphic and audio recordings of the plaintiff, and

other terms set forth in the agreement, a true and correct copy of which is attached.

The plaintiff alleges the terms and provisions of the exhibited agreement, identified as the "Data Retention Policy" and alleges and incorporates each statement therein into this complaint.

The defendant was given a period of time to notice the plaintiff of its intent to be excluded from the license terms, under which the defendant was obligated to purge its records and databases of any and all information pertaining to the plaintiff and/or provide a certificate of destruction of any records or information it could not return. These terms are more fully set forth in the attached Exhibit A "DATA RETENTION POLICY".

The defendant has failed to comply with the "opt-out" provisions that would have excluded itself from the obligations under the license agreement.

The defendant is currently in breach of the license agreement for using and benefiting from the plaintiffs' identifying information as defined in the agreement.

The defendant is liable to the plaintiff for liquidated damages as set forth in the agreement.

As of this day, the defendant is liable to the plaintiff in the amount or equivalent of 2.46 ounces of gold (Au) or its equivalent in Bitcoin (XBT), for each day beginning from November 12th 2015 and continuing through until the current day.

WHEREFORE the plaintiff demands judgment for liquidated damages in the amount of 2.46 ounces of gold (Au) or its equivalent in Bitcoin (XBT), for each day beginning from November 12th 2015 and continuing through until the current day, plus court costs, attorney fees and for other relief as this court deems appropriate.

**COMPLAINT FOR BREACH OF CONTRACT**

**AND LIQUIDATED DAMAGES – COUNT X**

Come now the plaintiffs Larry N. Dorsey and Arlene E. Couch and sue the defendant U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION AS

TRUSTEE FOR BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2005-AQ2 ASSET-BACKED CERTIFICATES, SERIES 2005-AQ2 in the following legal action to protect a private civil right and to compel a civil remedy for liquidated damages resulting from the breach of a license agreement, and alleges the following:

## JURISDICTION

This is an action at law and this court has original jurisdiction pursuant to Article III, Section 2 of the United States Constitution and Title 28 U.S.C. §1331.

This is a complaint for damages that exceeds $75,000.

There is a diversity of citizenship between the plaintiff and defendant.

## VENUE

Plaintiffs have resided at the address known as 2200 Emory Road, Reisterstown, Maryland, Carroll County, for all times material to this complaint, for all times material to this complaint.

The defendant is a corporation doing business in the State of Maryland with its principle place of business at the address of 3815 South West Temple, Salt Lake City, UT 84115-4412, for all times material to this complaint.

## PLAIN STATEMENT

The defendant entered into a license agreement with the plaintiff which included liquidated damages for any breach or material breach thereof.

The defendant has breached this agreement and the plaintiffs have suffered damages thereby and now seeks a judgment against the defendant for these damages.

## STATEMENTS OF FACT AND DEFINITIONS AND ALLEGATIONS

The abbreviation "XBT" is defined in the agreement upon which this complaint is based.

The abbreviation "Au" is defined in the agreement upon which this complaint is based.

On the date of November 11th 2015, the defendant entered into a license agreement with the plaintiff for the use of plaintiffs' identifying information, including

credit file, bank accounts, financial information, tax records and other personal and identifying information such as video-graphic and audio recordings of the plaintiff, and other terms set forth in the agreement, a true and correct copy of which is attached.

The plaintiff alleges the terms and provisions of the exhibited agreement, identified as the "Data Retention Policy" and alleges and incorporates each statement therein into this complaint.

The defendant was given a period of time to notice the plaintiff of its intent to be excluded from the license terms, under which the defendant was obligated to purge its records and databases of any and all information pertaining to the plaintiff and/or provide a certificate of destruction of any records or information it could not return. These terms are more fully set forth in the attached Exhibit A "DATA RETENTION POLICY".

The defendant has failed to comply with the "opt-out" provisions that would have excluded itself from the obligations under the license agreement.

The defendant is currently in breach of the license agreement for using and benefiting from the plaintiffs' identifying information as defined in the agreement.

The defendant is liable to the plaintiff for liquidated damages as set forth in the agreement.

As of this day, the defendant is liable to the plaintiff in the amount or equivalent of 2.46 ounces of gold (Au) or its equivalent in Bitcoin (XBT), for each day beginning from November 12th 2015 and continuing through until the current day.

WHEREFORE the plaintiff demands judgment for liquidated damages in the amount of 2.46 ounces of gold (Au) or its equivalent in Bitcoin (XBT), for each day beginning from November 12th 2015 and continuing through until the current day, plus court costs, attorney fees and for other relief as this court deems appropriate.

## COUNT XI – COMPLAINT FOR VIOLATIONS OF

## THE MARYLAND FAIR DEBT COLLECTION PRACTICES ACT

Now come the Plaintiffs Larry N. Dorsey and Arlene E. Couch and sue the Defendant JAMES E. CLARKE, RENEE DYSON, BRIAN THOMAS, ERIN M. COHEN,

HUGH J. GREEN PATRICK M. A. DECKER, DBA "SUBSTITUTE TRUSTEES" for unfair and deceptive collection practices for violations of the Maryland Fair Debt Collection Practices Act and allege the following:

**JURISDICTION AND VENUE**

The Maryland Fair Debt Collection Practices Act gives this court jurisdiction to hear complaints for violations of this Act.

Plaintiffs have resided at the address known as 2200 Emory Road, Reisterstown, Maryland, Carroll County, for all times material to this complaint.

The defendant is a group of individuals doing business as "Substitute Trustees" in the State of Maryland with its principle place of business at the address of 1602 Village Market Blvd SE #310, Leesburg, VA 20175, for all times material to this complaint.

The requisite notices and demands have been served upon the defendants.

The defendant is not excluded by any provision under §7-102(b) of the Maryland Fair Debt Collection Practices Act.

**PLAIN STATEMENT**

The plaintiff is the mortgagor in a trust deed that was recorded on or soon after the date of February 20th 2012 in Carroll County, Maryland, in the amount of $388,000. The deed secured the payment of a promissory note ARGENT MORTGAGE COMPANY, LLC, the lender stated on the trust deed. The trustee is Wayne Lee and there were no other parties identified as having an interest in this trust deed or having any rights thereunder, within the instruments, (note and trust deed).

The defendant is a "debt collector" as defined by the Maryland Fair Debt Collection Practices Act.

The Defendant appears to be foreclosing on a trust deed (trust deed) in which it was never named.

None of these individuals are trustees or have any powers of a trustee under the trust deed and the trustee named therein, Wayne Lee, has not made such appointment and has no knowledge of these so-called "substitute trustees".

## STATEMENTS OF FACT

The Defendant appears to be attempting to foreclose on a trust deed in which none of them were never named.

The defendant falsely identifies a list of individuals who claim to have magically become the trustee or "substitute trustees" under the trust deed described herein and are not claiming the right to foreclose.

None of these individuals are trustees or have any powers of a trustee under the trust deed and the trustee named therein, Wayne Lee, has not made such appointment and has no knowledge of these so-called "substitute trustees".

The defendant filed a request for an order to docket in the trial court of Maryland and with it, included a series of affidavits claims rights to which none of the parties had or have ever acquired.

The plaintiffs sent several requests for information, such as asking how the defendant or its agents obtained her banking information, to which no response was given. True and correct copies of which are attached.

The Plaintiffs have requested information and records from the defendant as detailed herein and various records have been provided; however,

The defendant has willfully misrepresented its rights under the trust deed and provided false statements to the court regarding the claim that it had acquired the rights under the trust deed to act as a "substitute trustee" when no such rights are identified in the instrument.

The defendant exhibited a copy of a note, the original of which does not exist and a copy of a trust deed that it most probably acquired from the county records. The purported note does not exist, it's been either lost, stolen, mutilated, destroyed or spent or exchanged for other value or consideration, but the defendant does not have the exhibited note (fabrication) because the note in a loan transaction is the loan and the borrower has already destroyed or disposed of the note in a way that allowed it to realize the gain from the value of the note, and because of this, the note does not exist.

The defendant has made false and deceptive certifications, false and deceptive affidavits and false and deceptive representations to the plaintiff in its efforts to obtain an order to docket for the purpose of conveying the title of plaintiffs' property to itself or

another party for a profit.

The defendant has sent written communications to the plaintiff that misrepresent or are intended to deceive the plaintiff into believing that unless the plaintiff pays money to the defendant, the defendant has the right to foreclose and intends to foreclose unless payments are made to the defendant.

The plaintiff asked the defendant to identify its legal interests in the trust deed and note and to explain how it acquired these interests, but these requests were ignored.

The plaintiff also asked the defendant to identify how and when it obtained permission to use or obtain the plaintiffs' personal banking and identifying information, including date of birth, mailing address, credit file and bank records, but no response has so far been given by the defendant. The defendant has remained silent in response to these questions and requests, yet the defendant had and does have a duty to answer.

We first became aware of the defendant's action to undertake a foreclosure of our property in early January of 2014 when we received notification in the mail. The notice referenced the trust deed described herein, but the notice was sent by strangers not named in the trust deed, and not assigned by any authority (power of sale) within the trust deed or pooling and servicing agreement. The plaintiffs do not challenge the validity of the recorded trust deed, but challenge only the collection actions undertaken by the defendants under the trust deed.

Furthermore, the defendants are not in possession of the original promissory note that gave rise to the trust deed. Assuming that this note still exists, and assuming for a moment that a copy can be authenticated by a competent fact witness, the defendant's copy is no less of a counterfeit or a forgery than a photocopy of a one-hundred dollar bill.

On it's face, the note exhibited by the defendant includes provisions that would normally constitute the promise to pay; however, the note includes additional provisions such as penalties, insurance and notice requirements that are beyond the terms for the promise to pay. This note is non-negotiable and there is no record of any requisite assignment agreement being recorded or associated with the instrument. The trust

deed follows the note and the exhibited note in this case has not been duly assigned to the foreclosing parties. Likewise, the foreclosing parties are acting without any power of sale, whether or not it is expressed in the exhibited trust deed.

The copy of of the note and trust deed exhibited by the plaintiff appears to have been altered at different points in time since the date appearing thereon.

The defendant has somehow acquired the personal and banking information of each of the plaintiff and has used that information for their own personal gain and benefit without any permissible purpose.

Within the previous twelve months, the defendant began sending written communication to the plaintiff stating that it was representing various parties having rights under the same trust deed, or at least plaintiff understood that it was representing parties, including the other defendants, the trustee, a bank, a law firm, etc. who were all claiming some rights in the plaintiffs' property.

Plaintiff asked the defendant to provide verification that these parties it was supposed to have been representing, whose names it was using, or who were aware of its actions. No response was given.

The plaintiff explained that the reason for these requests were, in part, because none of these parties were named in the trust deed referenced by this defendant.

The defendant sent written communication to the plaintiffs stating that it was representing various parties, or at least plaintiff understood that it was representing parties, including the other defendants, the trustee, a bank, a law firm, etc. who were all claiming some rights in the plaintiffs' property.

Plaintiffs asked the defendant to provide verification that these parties she was supposed to have been representing, whose names she was using, were aware of her actions.

The plaintiffs explained that the reason for these requests were, in part, because none of these parties were named in the trust deed referenced by this defendant.

Plaintiff also asked the defendant to explain how it obtained the personal and private banking, financial and identifying information of the plaintiffs. The defendant failed or refused to answer these questions, in spite of being advised that she was in violation of the Fair Debt Collection Practices Act and may be subject to penalties and

actual damages for continuing to undertake these actions.

The purported debt is not a debt held or collected under the name of the defendant.

The defendant made false representations that it was the holder of a note or promise to pay in which the plaintiff owed the defendant.

The defendant made false representations that it had rights to foreclose against the plaintiffs' property (home) under the provisions of a trust deed that is recorded against the title of the plaintiffs' property in the county where the property is situated.

The defendant is utilizing the statutory foreclosure process for this state for the purpose of engaging in a scheme that aims to conceal the identity, source, and destination of illicitly-obtained money, specifically the plaintiffs' promissory note.

First, the defendant acquired a copy, forged or counterfeit version of the plaintiffs' promissory note. The actual steps taken are unclear at this time but there was no valuable consideration given in the process and the original lender or originator either no longer exists or has no records of this instrument.

Second, the defendant is and has been employing a complex scheme, including what has become known recently as "securitization", and then assignments, trusteeships and other counter parties or affiliates such as "serving agents" to obscure who initially received the money.

Finally, the parties involved have been compensated in a list of different ways from this scheme, such as removing the liability from accounting records and obtaining tax benefits from the United States, sustaining the illusion of solvency for pension funds of those government officers who participate in the scheme, including judges and attorneys and clerks of the court. And all of these steps have been undertaken in a very complex, obscure and indirect way so as to conceal who did what and when.

The defendant requested certain financial disclosures from the plaintiff claiming that the disclosures would persuade the defendant to cease its foreclosure actions provided that money was paid by the plaintiff to the defendant or its privies.

Once the plaintiff made disclosures of her financial and credit information, the

defendant sent a letter stating that it would not be able to help her and never returned the information, records or sent the plaintiff a certificate stating that these records and information had been destroyed.

It should be noted that the defendant did not have the typical credit information of the plaintiff, such as a social security number, or date of birth or other banking information that a creditor would normally be expected to have already obtained before a debt obligation was established.

The defendant has used a false or fictitious name in the undertaking of its collection actions.

The defendant has used a name other than the true name of its business, company or organization.

After several written requests, the defendant has refused to identify its owners, principals or interests it claims to have in the plaintiffs' property. Instead of making these disclosures, defendant has falsely represented that it does have certain legal rights under the trust deed and that it has the right to foreclose of the plaintiff fails or refuses to provide more credit, banking, financial, personal and other identifying information along with agreeing to making regular payments of money to the defendant or its privies.

True and correct copies of these correspondences are included as Exhibit A.

The defendant failed or refused to provide an accounting of its claim showing any unpaid balance and instead simply demanded money in exchange for not foreclosing and has only provided copies of records that anyone could obtain from the county recorders' office.

The defendant has falsely represented the name of the creditor to whom it alleges the debt is owed.

The defendant has threatened to undertake a foreclosure action against the plaintiff when it has no such rights to do so.

The defendant falsely represented that if the plaintiff failed or refused to cooperate by providing financial, banking, credit, personal and other identifying

information along with money, that it would sell the plaintiffs' property at a public auction.

The defendant delivered to the plaintiff written communications that were made to look like or falsely represent documents authorized, issued, or approved by a court, official, or agency of the United States or the state, by using words that would give a false impression of the document's source, authorization, or approval.

The defendant has falsely represented that the plaintiffs' credit accounts were sold to innocent purchases for value.

The defendant failed to provide the Plaintiff with validation of debt within five business days of contacting her.

The defendant has been and is undertaking an unfair and deceptive collection practice for the reasons stated herein.

The Defendant claims that the original version of the exhibited note is now owned by and in the custody of other parties that he represents and that are doing business at the address of the Defendant's office but again, Defendant has failed to identify its legal interests or rights to obtain the defendant's personal information. The other parties working with the Defendant appear to be involved in some way, including but not limited to, having claimed to be the note holder or assignee at some point, but this is ambiguous because of the actions undertaken by the Defendant.

Plaintiffs demand a jury trial.

WHEREFORE plaintiff respectfully requests judgment against the defendant for penalties impose under the Maryland Fair Debt Collection Practices Act, for actual damages, penalties imposed by statute and for other relief as deemed appropriate by this court.

## COUNT XII – COMPLAINT FOR VIOLATIONS OF
## THE MARYLAND FAIR DEBT COLLECTION PRACTICES ACT

Now come the Plaintiffs Larry N Dorsey and Arlene E. Couch and sue the Defendant SELECT PORFOLIO SERVICES, INC. DBA "SPS" for unfair and deceptive collection practices for violations of the Maryland Fair Debt Collection Practices Act and allege the following:

## JURISDICTION AND VENUE

The Maryland Fair Debt Collection Practices Act gives this court jurisdiction to hear complaints for violations of this Act.

Plaintiffs have resided at the address known as 2200 Emory Road, Reisterstown, Maryland, Carroll County, for all times material to this complaint, for all times material to this complaint.

The defendant is a corporation doing business in the State of Maryland with its principle place of business at the address of 3815 South West Temple, Salt Lake City, UT 84115-4412, for all times material to this complaint.

The defendant is a "debt collector" as defined by the Maryland Fair Debt Collection Practices Act.

The requisite notices and demands have been served upon the defendants.

The defendant is not excluded by any provision under §7-102(b) of the Maryland Fair Debt Collection Practices Act.

## STATEMENTS OF FACT

The Defendant appears to be attempting to foreclose on a trust deed in which it had never acquired any rights.

The defendant falsely identifies a list of individuals who claim to have magically become the trustee or "substitute trustees" under the trust deed described herein and are not claiming the right to foreclose.

None of these individuals are trustees or have any powers of a trustee under the trust deed and the trustee named therein, Wayne Lee, has not made such appointment and has no knowledge of these so-called "substitute trustees".

The defendant participated and assisted the other defendants in filing a request for an order to docket in the trial court of Maryland and with it, included a series of affidavits claims rights to which none of the parties had or have ever acquired.

The plaintiffs sent several requests for information, such as asking how the defendant or its agents obtained her banking information, to which no response was given. True and correct copies of which are attached.

The Plaintiffs have requested information and records from the defendant as detailed herein and various records have been provided; however,

The defendant has willfully misrepresented its rights under the trust deed and provided false statements to the court regarding the claim that it had acquired the rights under the trust deed to act as a "substitute trustee" when no such rights are identified in the instrument.

The defendant exhibited a copy of a note, the original of which does not exist and a copy of a trust deed that it most probably acquired from the county records. The purported note does not exist, it's been either lost, stolen, mutilated, destroyed or spent or exchanged for other value or consideration, but the defendant does not have the exhibited note (fabrication) because the note in a loan transaction is the loan and the borrower has already destroyed or disposed of the note in a way that allowed it to realize the gain from the value of the note, and because of this, the note does not exist.

The defendant has made false and deceptive certifications, false and deceptive affidavits and false and deceptive representations to the plaintiff in its efforts to obtain an order to docket for the purpose of conveying the title of plaintiffs' property to itself or another party for a profit.

The defendant has sent written communications to the plaintiff that misrepresent or are intended to deceive the plaintiff into believing that unless the plaintiff pays money to the defendant, the defendant has the right to foreclose and intends to foreclose unless payments are made to the defendant.

The plaintiff asked the defendant to identify its legal interests in the trust deed and note and to explain how it acquired these interests, but these requests were ignored.

The plaintiff also asked the defendant to identify how and when it obtained permission to use or obtain the plaintiffs' personal banking and identifying information, including date of birth, mailing address, credit file and bank records, but no response has so far been given by the defendant. The defendant has remained silent in response to these questions and requests, yet the defendant had and does have a duty to answer.

We first became aware of the defendant's action to undertake a foreclosure of our property in early January 2014 when we received notification in the mail. The notice referenced the trust deed described herein, but the notice was sent by strangers not named in the trust deed, and not assigned by any authority (power of sale) within the trust deed or pooling and servicing agreement. The plaintiffs do not challenge the validity of the recorded trust deed, but challenge only the collection actions undertaken by the defendants under the trust deed.

Furthermore, the defendants are not in possession of the original promissory note that gave rise to the trust deed. Assuming that this note still exists, and assuming for a moment that a copy can be authenticated by a competent fact witness, the defendant's copy is no less of a counterfeit or a forgery than a photocopy of a one-hundred dollar bill.

On it's face, the note exhibited by the defendant includes provisions that would normally constitute the promise to pay; however, the note includes additional provisions such as penalties, insurance and notice requirements that are beyond the terms for the promise to pay. This note is non-negotiable and there is no record of any requisite assignment agreement being recorded or associated with the instrument. The trust deed follows the note and the exhibited note in this case has not been duly assigned to the foreclosing parties. Likewise, the foreclosing parties are acting without any power of sale, whether or not it is expressed in the exhibited trust deed.

The copy of of the note and trust deed exhibited by the plaintiff appears to have been altered at different points in time since the date appearing thereon.

The defendant has somehow acquired the personal and banking information of each of the plaintiff and has used that information for their own personal gain and benefit without any permissible purpose.

Within the previous twelve months, the defendant began sending written communication to the plaintiff stating that it was representing various parties having rights under the same trust deed, or at least plaintiff understood that it was representing parties, including the other defendants, the trustee, a bank, a law firm, etc. who were all claiming some rights in the plaintiffs' property.

Plaintiff asked the defendant to provide verification that these parties it was supposed to have been representing, whose names it was using, or who were aware of

its actions. No response was given.

The plaintiff explained that the reason for these requests were, in part, because none of these parties were named in the trust deed referenced by this defendant.

The defendant sent written communication to the plaintiffs stating that it was representing various parties, or at least plaintiff understood that it was representing parties, including the other defendants, the trustee, a bank, a law firm, etc. who were all claiming some rights in the plaintiffs' property.

Plaintiffs asked the defendant to provide verification that these parties she was supposed to have been representing, whose names she was using, were aware of her actions.

The plaintiffs explained that the reason for these requests were, in part, because none of these parties were named in the trust deed referenced by this defendant.

Plaintiff also asked the defendant to explain how it obtained the personal and private banking, financial and identifying information of the plaintiffs. The defendant failed or refused to answer these questions, in spite of being advised that she was in violation of the Fair Debt Collection Practices Act and may be subject to penalties and actual damages for continuing to undertake these actions.

The purported debt is not a debt held or collected under the name of the defendant.

The defendant made false representations that it was the holder of a note or promise to pay in which the plaintiff owed the defendant.

The defendant made false representations that it had rights to foreclose against the plaintiffs' property (home) under the provisions of a trust deed that is recorded against the title of the plaintiffs' property in the county where the property is situated.

The defendant is utilizing the statutory foreclosure process for this state for the purpose of engaging in a scheme that aims to conceal the identity, source, and destination of illicitly-obtained money, specifically the plaintiffs' promissory note.

First, the defendant acquired a copy, forged or counterfeit version of the plaintiffs' promissory note. The actual steps taken are unclear at this time but there was no valuable consideration given in the process and the original lender or originator either

no longer exists or has no records of this instrument.

Second, the defendant is and has been employing a complex scheme, including what has become known recently as "securitization", and then assignments, trusteeships and other counter parties or affiliates such as "serving agents" to obscure who initially received the money.

Finally, the parties involved have been compensated in a list of different ways from this scheme, such as removing the liability from accounting records and obtaining tax benefits from the United States, sustaining the illusion of solvency for pension funds of those government officers who participate in the scheme, including judges and attorneys and clerks of the court. And all of these steps have been undertaken in a very complex, obscure and indirect way so as to conceal who did what and when.

The defendant requested certain financial disclosures from the plaintiff claiming that the disclosures would persuade the defendant to cease its foreclosure actions provided that money was paid by the plaintiff to the defendant or its privies.

Once the plaintiff made disclosures of her financial and credit information, the defendant sent a letter stating that it would not be able to help her and never returned the information, records or sent the plaintiff a certificate stating that these records and information had been destroyed.

It should be noted that the defendant did not have the typical credit information of the plaintiff, such as a social security number, or date of birth or other banking information that a creditor would normally be expected to have already obtained before a debt obligation was established.

The defendant has used a false or fictitious name in the undertaking of its collection actions.

The defendant has used a name other than the true name of its business, company or organization.

After several written requests, the defendant has refused to identify its owners, principals or interests it claims to have in the plaintiffs' property. Instead of making these disclosures, defendant has falsely represented that it does have certain legal

rights under the trust deed and that it has the right to foreclose of the plaintiff fails or refuses to provide more credit, banking, financial, personal and other identifying information along with agreeing to making regular payments of money to the defendant or its privies.

True and correct copies of these correspondences are included as Exhibit A.

The defendant failed or refused to provide an accounting of its claim showing any unpaid balance and instead simply demanded money in exchange for not foreclosing and has only provided copies of records that anyone could obtain from the county recorders' office.

The defendant has falsely represented the name of the creditor to whom it alleges the debt is owed.

The defendant has threatened to undertake a foreclosure action against the plaintiff when it has no such rights to do so.

The defendant falsely represented that if the plaintiff failed or refused to cooperate by providing financial, banking, credit, personal and other identifying information along with money, that it would sell the plaintiffs' property at a public auction.

The defendant delivered to the plaintiff written communications that were made to look like or falsely represent documents authorized, issued, or approved by a court, official, or agency of the United States or the state, by using words that would give a false impression of the document's source, authorization, or approval.

The defendant has falsely represented that the plaintiffs' credit accounts were sold to innocent purchases for value.

The defendant failed to provide the Plaintiff with validation of debt within five business days of contacting her.

The defendant has been and is undertaking an unfair and deceptive collection practice for the reasons stated herein.

The Defendant claims that the original version of the exhibited note is now owned by and in the custody of other parties that he represents and that are doing

business at the address of the Defendant's office but again, Defendant has failed to identify its legal interests or rights to obtain the defendant's personal information. The other parties working with the Defendant appear to be involved in some way, including but not limited to, having claimed to be the note holder or assignee at some point, but this is ambiguous because of the actions undertaken by the Defendant.

Plaintiffs demand a jury trial.

WHEREFORE plaintiff respectfully requests judgment against the defendant for penalties impose under the Maryland Fair Debt Collection Practices Act, for actual damages, penalties imposed by statute and for other relief as deemed appropriate by this court.

**COUNT XIII – COMPLAINT FOR VIOLATIONS OF**

**THE MARYLAND FAIR DEBT COLLECTION PRACTICES ACT**

Now come the Plaintiffs Larry N Dorsey and Arlene E. Couch and sue the Defendant U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION AS TRUSTEE FOR BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2005-AQ2 ASSET-BACKED CERTIFICATES, SERIES 2005-AQ2 for unfair and deceptive collection practices for violations of the Maryland Fair Debt Collection Practices Act and allege the following:

**JURISDICTION AND VENUE**

The Maryland Fair Debt Collection Practices Act gives this court jurisdiction to hear complaints for violations of this Act.

Plaintiffs have resided at the address known as 2200 Emory Road, Reisterstown, Maryland, Carroll County, for all times material to this complaint.

The defendant does not exist in any known system of records within the State of Maryland or the United States but is being represented as doing business in the State of Maryland with its principle place of business at the address of 3815 South West Temple, Salt Lake City, UT 84115-4412, for all times material to this complaint.

The defendant is a "debt collector" as defined by the Maryland Fair Debt Collection Practices Act.

The requisite notices and demands have been served upon the defendants.

The defendant is not excluded by any provision under §7-102(b) of the Maryland Fair Debt Collection Practices Act.

**PLAIN STATEMENT**

The plaintiff is the mortgagor in a trust deed that was recorded on or soon after the date of February 20th 2012 in Carroll County, Maryland, in the amount of $388,000. The deed secured the payment of a promissory note ARGENT MORTGAGE COMPANY, LLC, the lender stated on the trust deed. The trustee is Wayne Lee and there were no other parties identified as having an interest in this trust deed or having any rights thereunder, within the instruments, (note and trust deed).

The Defendant appears to be foreclosing on a trust deed (trust deed) in which it was never named and has been using unfair and deceptive practices to obtain control over the plaintiffs' property when it has no such rights.

**STATEMENTS OF FACT**

The Defendant claims to be the beneficiary of the trust deed described herein and claims to have the rights thereunder and with the assistance of the other defendants, has been proceeding to use the state court system to foreclose against the plaintiffs' property.

The defendant falsely identifies a list of individuals who claim to have magically become the trustee or "substitute trustees" under the trust deed described herein and are not claiming the right to foreclose.

The defendant does not have the power of sale or any other rights stated in the trust deed. The trustee has never conveyed any rights to any other parties, including the defendant.

The defendant's agent, the other defendant doing business as "Substitute Trustees", filed a request for an order to docket in the trial court of Maryland and with it, included a series of affidavits claims rights to which none of the parties had or have ever acquired.

The plaintiffs sent several requests for information, such as asking how the defendant or its agents obtained her banking information, to which no response was given. True and correct copies of which are attached.

The Plaintiffs have requested information and records from the defendant as detailed herein and various records have been provided; however,

The defendant has willfully misrepresented its rights under the trust deed and provided false statements to the court regarding the claim that it had acquired the rights under the trust deed to act as a "substitute trustee" when no such rights are identified in the instrument.

The defendant exhibited a copy of a note, the original of which does not exist and a copy of a trust deed that it most probably acquired from the county records. The purported note does not exist, it's been either lost, stolen, mutilated, destroyed or spent or exchanged for other value or consideration, but the defendant does not have the exhibited note (fabrication) because the note in a loan transaction is the loan and the borrower has already destroyed or disposed of the note in a way that allowed it to realize the gain from the value of the note, and because of this, the note does not exist.

The defendant has made false and deceptive certifications, false and deceptive affidavits and false and deceptive representations to the plaintiff in its efforts to obtain an order to docket for the purpose of conveying the title of plaintiffs' property to itself or another party for a profit.

The defendant has sent written communications to the plaintiff that misrepresent or are intended to deceive the plaintiff into believing that unless the plaintiff pays money to the defendant, the defendant has the right to foreclose and intends to foreclose unless payments are made to the defendant.

The plaintiff asked the defendant to identify its legal interests in the trust deed and note and to explain how it acquired these interests, but these requests were ignored.

The plaintiff also asked the defendant to identify how and when it obtained permission to use or obtain the plaintiffs' personal banking and identifying information, including date of birth, mailing address, credit file and bank records, but no response

has so far been given by the defendant. The defendant has remained silent in response to these questions and requests, yet the defendant had and does have a duty to answer.

We first became aware of the defendant's action to undertake a foreclosure of our property in early January of 2014 when we received notification in the mail. The notice referenced the trust deed described herein, but the notice was sent by strangers not named in the trust deed, and not assigned by any authority (power of sale) within the trust deed or pooling and servicing agreement. The plaintiffs do not challenge the validity of the recorded trust deed, but challenge only the collection actions undertaken by the defendants under the trust deed.

Furthermore, the defendants are not in possession of the original promissory note that gave rise to the trust deed. Assuming that this note still exists, and assuming for a moment that a copy can be authenticated by a competent fact witness, the defendant's copy is no less of a counterfeit or a forgery than a photocopy of a one-hundred dollar bill.

On it's face, the note exhibited by the defendant includes provisions that would normally constitute the promise to pay; however, the note includes additional provisions such as penalties, insurance and notice requirements that are beyond the terms for the promise to pay. This note is non-negotiable and there is no record of any requisite assignment agreement being recorded or associated with the instrument. The trust deed follows the note and the exhibited note in this case has not been duly assigned to the foreclosing parties. Likewise, the foreclosing parties are acting without any power of sale, whether or not it is expressed in the exhibited trust deed.

The copy of of the note and trust deed exhibited by the plaintiff appears to have been altered at different points in time since the date appearing thereon.

The defendant has somehow acquired the personal and banking information of each of the plaintiff and has used that information for their own personal gain and benefit without any permissible purpose.

Within the previous twelve months, the defendant began sending written communication to the plaintiff stating that it was representing various parties having rights under the same trust deed, or at least plaintiff understood that it was representing parties, including the other defendants, the trustee, a bank, a law firm, etc. who were all

claiming some rights in the plaintiffs' property.

Plaintiff asked the defendant to provide verification that these parties it was supposed to have been representing, whose names it was using, or who were aware of its actions. No response was given.

The plaintiff explained that the reason for these requests were, in part, because none of these parties were named in the trust deed referenced by this defendant.

The defendant sent written communication to the plaintiffs stating that it was representing various parties, or at least plaintiff understood that it was representing parties, including the other defendants, the trustee, a bank, a law firm, etc. who were all claiming some rights in the plaintiffs' property.

Plaintiffs asked the defendant to provide verification that these parties she was supposed to have been representing, whose names she was using, were aware of her actions.

The plaintiffs explained that the reason for these requests were, in part, because none of these parties were named in the trust deed referenced by this defendant.

Plaintiff also asked the defendant to explain how it obtained the personal and private banking, financial and identifying information of the plaintiffs. The defendant failed or refused to answer these questions, in spite of being advised that she was in violation of the Fair Debt Collection Practices Act and may be subject to penalties and actual damages for continuing to undertake these actions.

The purported debt is not a debt held or collected under the name of the defendant.

The defendant made false representations that it was the holder of a note or promise to pay in which the plaintiff owed the defendant.

The defendant made false representations that it had rights to foreclose against the plaintiffs' property (home) under the provisions of a trust deed that is recorded against the title of the plaintiffs' property in the county where the property is situated.

The defendant is utilizing the statutory foreclosure process for this state for the purpose of engaging in a scheme that aims to conceal the identity, source, and destination of illicitly-obtained money, specifically the plaintiffs' promissory note.

First, the defendant acquired a copy, forged or counterfeit version of the plaintiffs' promissory note. The actual steps taken are unclear at this time but there was no valuable consideration given in the process and the original lender or originator either no longer exists or has no records of this instrument.

Second, the defendant is and has been employing a complex scheme, including what has become known recently as "securitization", and then assignments, trusteeships and other counter parties or affiliates such as "serving agents" to obscure who initially received the money.

Finally, the parties involved have been compensated in a list of different ways from this scheme, such as removing the liability from accounting records and obtaining tax benefits from the United States, sustaining the illusion of solvency for pension funds of those government officers who participate in the scheme, including judges and attorneys and clerks of the court. And all of these steps have been undertaken in a very complex, obscure and indirect way so as to conceal who did what and when.

The defendant requested certain financial disclosures from the plaintiff claiming that the disclosures would persuade the defendant to cease its foreclosure actions provided that money was paid by the plaintiff to the defendant or its privies.

Once the plaintiff made disclosures of her financial and credit information, the defendant sent a letter stating that it would not be able to help her and never returned the information, records or sent the plaintiff a certificate stating that these records and information had been destroyed.

It should be noted that the defendant did not have the typical credit information of the plaintiff, such as a social security number, or date of birth or other banking information that a creditor would normally be expected to have already obtained before a debt obligation was established.

The defendant has used a false or fictitious name in the undertaking of its collection actions.

The defendant has used a name other than the true name of its business, company or organization.

After several written requests, the defendant has refused to identify its owners, principals or interests it claims to have in the plaintiffs' property. Instead of making these disclosures, defendant has falsely represented that it does have certain legal rights under the trust deed and that it has the right to foreclose of the plaintiff fails or refuses to provide more credit, banking, financial, personal and other identifying information along with agreeing to making regular payments of money to the defendant or its privies.

True and correct copies of these correspondences are included as Exhibit A.

The defendant failed or refused to provide an accounting of its claim showing any unpaid balance and instead simply demanded money in exchange for not foreclosing and has only provided copies of records that anyone could obtain from the county recorders' office.

The defendant has falsely represented the name of the creditor to whom it alleges the debt is owed.

The defendant has threatened to undertake a foreclosure action against the plaintiff when it has no such rights to do so.

The defendant falsely represented that if the plaintiff failed or refused to cooperate by providing financial, banking, credit, personal and other identifying information along with money, that it would sell the plaintiffs' property at a public auction.

The defendant delivered to the plaintiff written communications that were made to look like or falsely represent documents authorized, issued, or approved by a court, official, or agency of the United States or the state, by using words that would give a false impression of the document's source, authorization, or approval.

The defendant has falsely represented that the plaintiffs' credit accounts were sold to innocent purchases for value.

The defendant failed to provide the Plaintiff with validation of debt within five business days of contacting her.

The defendant has been and is undertaking an unfair and deceptive collection practice for the reasons stated herein.

The Defendant claims that the original version of the exhibited note is now owned by and in the custody of other parties that he represents and that are doing business at the address of the Defendant's office but again, Defendant has failed to identify its legal interests or rights to obtain the defendant's personal information. The other parties working with the Defendant appear to be involved in some way, including but not limited to, having claimed to be the note holder or assignee at some point, but this is ambiguous because of the actions undertaken by the Defendant.

Plaintiffs demand a jury trial.

WHEREFORE plaintiff respectfully requests judgment against the defendant for penalties impose under the Maryland Fair Debt Collection Practices Act, for actual damages, penalties imposed by statute and for other relief as deemed appropriate by this court.

## COUNT XIV – COMPLAINT FOR VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT

Now come the Plaintiffs Larry N. Dorsey and Arlene E. Couch and sue the defendant SELECT PORTFOLIO SERVICES, INC. DBA "SPS", for unfair and deceptive collection practices for violations of the Maryland Consumer Protection Act and allege the following:

## JURISDICTION AND VENUE

The Maryland Consumer Protect Act gives this court jurisdiction to hear complaints for violations of this Act.

Plaintiffs have resided at the address known as 2200 Emory Road, Reisterstown, Maryland, Carroll County, for all times material to this complaint.

The defendant is a corporation doing business in the State of Maryland with its principle place of business at the address of 3815 South West Temple, Salt Lake City, UT 84115-4412, for all times material to this complaint.

## PLAIN STATEMENT

The plaintiff is the mortgagor in a trust deed that was recorded on or soon after the date of February 20th 2012 in Carroll County, Maryland, in the amount of $388,000. The deed secured the payment of a promissory note ARGENT MORTGAGE COMPANY, LLC, the lender stated on the trust deed. The trustee is Wayne Lee and there were no other parties identified as having an interest in this trust deed or having any rights thereunder, within the instruments, (note and trust deed).

The Defendant appears to be involved with other organizations, as named in the previous counts, and attempting to foreclose on a trust deed (trust deed) in which neither was ever named.

This complaint concerns the defendant's actions and conduct whereby it acquired the plaintiffs' credit and financial information, at least enough to make it appear as if the defendant was working with the lender in the trust deed. The defendant then proceeded to send written communications to the plaintiff stating that it now either had rights to foreclose under the trust deed or that it was working with other parties who had rights to foreclose, unless the plaintiff made more financial disclosures and modified payment arrangements to the defendant.

The defendant pretended to help the plaintiff and lead him into making more and more financial disclosures and then either discontinued the communication after it obtained what it wanted, or created a situation to make it appear as if the plaintiff did not qualify, but then never returned or certified the destruction of the records and information obtain about the plaintiff.

## STATEMENTS OF FACT

The Defendant appears to be attempting to foreclose on a trust deed in which it was never named and under which it has no rights.

The defendant falsely identifies a list of individuals who claim to have magically become the trustee or "substitute trustees" under the trust deed described herein and are not claiming the right to foreclose.

None of these individuals are trustees or have any powers of a trustee under the trust deed and the trustee named therein, Wayne Lee, has not made such appointment and has no knowledge of these so-called "substitute trustees".

The defendant filed a request for an order to docket in the trial court of Maryland and with it, included a series of affidavits claims rights to which none of the parties had or have ever acquired.

The plaintiffs sent several requests for information, such as asking how the defendant or its agents obtained her banking information, to which no response was given. True and correct copies of which are attached.

The Plaintiffs have requested information and records from the defendant as detailed herein and various records have been provided; however,

The defendant has willfully misrepresented its rights under the trust deed and provided false statements to the court regarding the claim that it had acquired the rights under the trust deed to act as a "substitute trustee" when no such rights are identified in the instrument.

The defendant exhibited a copy of a note, the original of which does not exist and a copy of a trust deed that it most probably acquired from the county records. The purported note does not exist, it's been either lost, stolen, mutilated, destroyed or spent or exchanged for other value or consideration, but the defendant does not have the exhibited note (fabrication) because the note in a loan transaction is the loan and the borrower has already destroyed or disposed of the note in a way that allowed it to realize the gain from the value of the note, and because of this, the note does not exist.

The defendant has made false and deceptive certifications, false and deceptive affidavits and false and deceptive representations to the plaintiff in its efforts to obtain an order to docket for the purpose of conveying the title of plaintiffs' property to itself or another party for a profit.

The defendant has sent written communications to the plaintiff that misrepresent or are intended to deceive the plaintiff into believing that unless the plaintiff pays money to the defendant, the defendant has the right to foreclose and intends to foreclose unless payments are made to the defendant.

The plaintiff asked the defendant to identify its legal interests in the trust deed

and note and to explain how it acquired these interests, but these requests were ignored.

The plaintiff also asked the defendant or its agent, to identify how and when it obtained permission to use or obtain the plaintiffs' personal banking and identifying information, including date of birth, mailing address, credit file and bank records, but no response has so far been given by the defendant. The defendant has remained silent in response to these questions and requests, yet the defendant had and does have a duty to answer.

Plaintiffs each deny being in default as stated in the docketing request and the individuals making these statements have no personal knowledge of them.

As you can see, we have individuals claiming to have rights that are not established by any apparent consent or proper notice, and mysterious groups and masked individuals using corporations to represent corporations and agents acting in behalf of agents and trustees and third party strangers with no identifiable interest whatsoever, acting as if each had magically acquired certain rights to foreclose.

We first became aware of the defendant's action to undertake a foreclosure of our property in early January 2014 when we received notification in the mail. The notice referenced the trust deed described herein, but the notice was sent by strangers not named in the trust deed, and not assigned by any authority (power of sale) within the trust deed or pooling and servicing agreement. The plaintiffs do not challenge the validity of the recorded trust deed, but challenge only the collection actions undertaken by the defendants under the trust deed.

Furthermore, the defendants are not in possession of the original promissory note that gave rise to the trust deed. Assuming that this note still exists, and assuming for a moment that a copy can be authenticated by a competent fact witness, the defendant's copy is no less of a counterfeit or a forgery than a photocopy of a one-hundred dollar bill.

On it's face, the note exhibited by the defendants includes provisions that would normally constitute the promise to pay; however, the note includes additional provisions such as penalties, insurance and notice requirements that are beyond the terms for the promise to pay. This note is non-negotiable and there is no record of any requisite

assignment agreement being recorded or associated with the instrument. The trust deed follows the note and the exhibited note in this case has not been duly assigned to the foreclosing parties. Likewise, the foreclosing parties are acting without any power of sale, whether or not it is expressed in the exhibited trust deed.

The copy of of the note and trust deed exhibited by the plaintiff appears to have been altered at different points in time since the date appearing thereon.

Assuming for a moment that the purported trust deed and note are valid, each part had been bifurcated so that the trust deed is not an encumbrance against the property described in the notice.

The copy of of the note and trust deed exhibited by the plaintiff appears to have been altered at different points in time since the date appearing thereon.

The defendant has been and is undertaking an unfair and deceptive collection practice for the reasons stated herein.

The Defendant claims that the original version of the exhibited note is now owned by and in the custody of other parties that he represents and that are doing business at the address of the Defendant's office but again, Defendant has failed to identify its legal interests or rights to obtain the defendant's personal information. The other parties working with the Defendant appear to be involved in some way, including but not limited to, having claimed to be the note holder or assignee at some point, but this is ambiguous because of the actions undertaken by the Defendant.

Plaintiffs demand a jury trial.

WHEREFORE Plaintiff respectfully requests judgment against the defendant for penalties impose under the Maryland Consumer Protection Act, for actual damages, penalties imposed by statute, and for other relief as deemed appropriate by this court.

**COUNT XV – COMPLAINT FOR VIOLATIONS OF**

**THE MARYLAND CONSUMER PROTECTION ACT**

Now come the Plaintiffs Larry N. Dorsey and Arlene E. Couch and sue the defendant JAMES E. CLARKE, RENEE DYSON, BRIAN THOMAS, ERIN M. COHEN, HUGH J. GREEN PATRICK M. A. DECKER, DBA "SUBSTITUTE TRUSTEES" for unfair

and deceptive collection practices for violations of the Maryland Consumer Protection Act and allege the following:

**JURISDICTION AND VENUE**

The Maryland Consumer Protect Act gives this court jurisdiction to hear complaints for violations of this Act.

Plaintiffs have resided at the address known as 2200 Emory Road, Reisterstown, Maryland, Carroll County, for all times material to this complaint.

The defendant is a group of individuals doing business as "Substitute Trustees" in the State of Maryland with its principle place of business at the address of 1602 Village Market Blvd SE #310, Leesburg, VA 20175, for all times material to this complaint.

The plaintiffs are the mortgagor in a trust deed that was recorded on or soon after the date of February 20th 2012 in Carroll County, Maryland, in the amount of $388,000. The deed secured the payment of a promissory note ARGENT MORTGAGE COMPANY, LLC, the lender stated on the trust deed. The trustee is Wayne Lee and there were no other parties identified as having an interest in this trust deed or having any rights thereunder, within the instruments, (note and trust deed).

This complaint concerns the defendant's actions and conduct whereby it acquired the plaintiffs' credit and financial information, at least enough to make it appear as if the defendant was working with the lender in the trust deed. The defendant then proceeded to send written communications to the plaintiff stating that it now either had rights to foreclose under the trust deed or that it was working with other parties who had rights to foreclose, unless the plaintiff made more financial disclosures and modified payment arrangements to the defendant.

The defendant pretended to help the plaintiff and lead him into making more and more financial disclosures and then either discontinued the communication after it obtained what it wanted, or created a situation to make it appear as if the plaintiff did not qualify, but then never returned or certified the destruction of the records and information obtain about the plaintiff.

Beginning from around January of 2014 and continuing through the present day,

the plaintiff was contacted by the defendant and other organizations affiliated with, and that appeared to be working for the defendant. Plaintiffs have reason to believe that these organizations where owned and operated by the defendant and being used to conceal the identities of the defendant. These organizations threatened the plaintiffs with the taking their home and money unless they provided certain financial, personal, banking and identifying information to the defendant. Copies of these written communications are attached as Exhibits A and B.

The defendant also made inquiries of the plaintiff credit report but did not have a permissible purpose.

The defendant obtained records from the public domain that pertain to the plaintiffs' property and rights to his property, and then use these records to create additional records and convince the personnel working in the court system to participate in a public auction of the plaintiffs' home.

The defendant has deliberately and willfully, falsely presented itself and impersonated itself to the plaintiff as another person to obtain the plaintiffs' property for purposes not permitted by law or agreement.

The defendant had an affirmative duty to disclose the purposes for which it coerced plaintiffs' banking, personal, financial and identifying information.

The defendant's actions were deliberate and will and negligent and careless. The plaintiff was never provided with a disclosure of the defendant's document retention policy or an explanation of the purposes for which the plaintiffs' private information would be used.

The plaintiff requested a copy of the defendant's document retention policy but this request was ignored.

The defendant intentionally and willfully violated the plaintiffs' rights to privacy and to keep his private and personal records private.

The defendant engaged in communications with the plaintiff and deceived him into disclosing his private information. The defendant accomplished this by using the information already available to the defendant in the public domain to make it appear as if the defendant had some legal rights to obtain more of the plaintiffs' private

information, when the defendant did not have such rights.

After obtaining plaintiffs' private information, defendant used this information for its own financial gain and ulterior and undisclosed purposes, and for purposes not permitted by law or by the plaintiff. The defendant has or intends to file claims with the Internal Revenue Service, such as Form 1099, using the plaintiffs' identifying information.

The defendant has or intends to use the plaintiffs' private information to sell or trade with third parties for the mutual benefit of these parties, exclusive of contrary to the interests of the plaintiff.

The defendant used this information to sell the plaintiffs' property at a public auction in order to further give the appearance that it was legal when it was not.

Since the date of October 2014, and to the best of plaintiffs' knowledge, the defendant has been in possession of plaintiffs' private information, and without the consent of the plaintiff and without legal authority.

The plaintiffs have reason to believe that among the list of what appears to be separate defendants, the each share the exact same interests in the foreclosure action, yet not the property being foreclosed upon. The defendant conducts its business within Carroll County Maryland and is involved in regular business activities in this county for all times material to this complaint. The defendant is a "debt collector" as defined by the Maryland Consumer Protection Act.

The requisite notices and demands have been served upon the defendants.

**STATEMENTS OF FACT**

The Defendant appears to be attempting to foreclose on a trust deed in which it was never named and under which it had never acquired any rights.

The defendant falsely identifies a list of individuals who claim to have magically become the trustee or "substitute trustees" under the trust deed described herein and are not claiming the right to foreclose.

None of these individuals are trustees or have any powers of a trustee under the trust deed and the trustee named therein, Wayne Lee, has not made such appointment and has no knowledge of these so-called "substitute trustees".

The defendant filed a request for an order to docket in the trial court of Maryland and with it, included a series of affidavits claims rights to which none of the parties had or have ever acquired.

The plaintiffs sent several requests for information, such as asking how the defendant or its agents obtained her banking information, to which no response was given. True and correct copies of which are attached.

The Plaintiffs have requested information and records from the defendant as detailed herein and various records have been provided; however,

The defendant has willfully misrepresented its rights under the trust deed and provided false statements to the court regarding the claim that it had acquired the rights under the trust deed to act as a "substitute trustee" when no such rights are identified in the instrument.

The defendant exhibited a copy of a note, the original of which does not exist and a copy of a trust deed that it most probably acquired from the county records. The purported note does not exist, it's been either lost, stolen, mutilated, destroyed or spent or exchanged for other value or consideration, but the defendant does not have the exhibited note (fabrication) because the note in a loan transaction is the loan and the borrower has already destroyed or disposed of the note in a way that allowed it to realize the gain from the value of the note, and because of this, the note does not exist.

The defendant has made false and deceptive certifications, false and deceptive affidavits and false and deceptive representations to the plaintiff in its efforts to obtain an order to docket for the purpose of conveying the title of plaintiffs' property to itself or another party for a profit.

The defendant has sent written communications to the plaintiff that misrepresent or are intended to deceive the plaintiff into believing that unless the plaintiff pays money to the defendant, the defendant has the right to foreclose and intends to foreclose unless payments are made to the defendant.

The plaintiff asked the defendant to identify its legal interests in the trust deed and note and to explain how it acquired these interests, but these requests were ignored.

The plaintiff also asked the defendant or its agent, to identify how and when it obtained permission to use or obtain the plaintiffs' personal banking and identifying information, including date of birth, mailing address, credit file and bank records, but no response has so far been given by the defendant. The defendant has remained silent in response to these questions and requests, yet the defendant had and does have a duty to answer.

The foreclosing party has failed to meet the notice requirements and other conditions precedent to the sale, including but not limited to the statutory requirements under Maryland Code §7-105.1.

These organizations appear to be representing each other and the Defendant appears to be acting as the attorney for all of these organizations and certificates, and acting as the foreclosing trustee. It may constitute the unauthorized practice of law when these corporations are representing other corporations and individuals are representing corporations providing information about other corporations.

The "Assignment" is factually incorrect at the very least, because the trust deed cannot be transferred or assigned without the note, unless the documents have been bifurcated. The documents fails to state these facts but if the note and trust deed have been bifurcated, the trust deed is no longer a lien or encumbrance on the property that the defendant is seeking to foreclose upon.

Plaintiffs each deny being in default as stated in the docketing request and the individuals making these statements have no personal knowledge of them.

As you can see, we have individuals claiming to have rights that are not established by any apparent consent or proper notice, and corporations representing corporations and agents acting in behalf of agents and trustees and third party strangers with no identifiable interest whatsoever, acting as if each had magically acquired certain rights to foreclose.

We first became aware of the defendant's action to undertake a foreclosure of our property in early October 2014 when we received notification in the mail. The notice referenced the trust deed described herein, but the notice was sent by strangers not named in the trust deed, and not assigned by any authority (power of sale) within the trust deed or pooling and servicing agreement. The plaintiffs do not challenge the

validity of the recorded trust deed, but challenge only the collection actions undertaken by the defendants under the trust deed.

Furthermore, the defendants are not in possession of the original promissory note that gave rise to the trust deed. Assuming that this note still exists, and assuming for a moment that a copy can be authenticated by a competent fact witness, the defendant's copy is no less of a counterfeit or a forgery than a photocopy of a one-hundred dollar bill.

On it's face, the note exhibited by the defendants includes provisions that would normally constitute the promise to pay; however, the note includes additional provisions such as penalties, insurance and notice requirements that are beyond the terms for the promise to pay. This note is non-negotiable and there is no record of any requisite assignment agreement being recorded or associated with the instrument. The trust deed follows the note and the exhibited note in this case has not been duly assigned to the foreclosing parties. Likewise, the foreclosing parties are acting without any power of sale, whether or not it is expressed in the exhibited trust deed.

The copy of of the note and trust deed exhibited by the plaintiff appears to have been altered at different points in time since the date appearing thereon.

Assuming for a moment that the purported trust deed and note are valid, each part had been bifurcated so that the trust deed is not an encumbrance against the property described in the notice.

The copy of of the note and trust deed exhibited by the plaintiff appears to have been altered at different points in time since the date appearing thereon.

The defendant has been and is undertaking an unfair and deceptive collection practice for the reasons stated herein.

The Defendant claims that the original version of the exhibited note is now owned by and in the custody of other parties that he represents and that are doing business at the address of the Defendant's office but again, Defendant has failed to identify its legal interests or rights to obtain the defendant's personal information. The other parties working with the Defendant appear to be involved in some way, including but not limited to, having claimed to be the note holder or assignee at some point, but this is ambiguous because of the actions undertaken by the Defendant.

Plaintiffs demand a jury trial.

WHEREFORE Plaintiff respectfully requests judgment against the defendant for penalties impose under the Maryland Consumer Protection Act, for actual damages, penalties imposed by statute, and for other relief as deemed appropriate by this court.

## COUNT XVI – COMPLAINT FOR VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT

Now come the Plaintiffs Larry N. Dorsey and Arlene E. Couch and sue the defendant U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION AS TRUSTEE FOR BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2005-AQ2 ASSET-BACKED CERTIFICATES, SERIES 2005-AQ2, for unfair and deceptive collection practices for violations of the Maryland Consumer Protection Act and allege the following:

## JURISDICTION AND VENUE

The Maryland Consumer Protect Act gives this court jurisdiction to hear complaints for violations of this Act.

Plaintiffs have resided at the address known as 2200 Emory Road, Reisterstown, Maryland, Carroll County, for all times material to this complaint.

Defendant is a group of individuals, doing business as trustees for certificates and may best be classified as an unregistered association who is doing business in the State of Maryland with is principal place of business at 700 Kansas Lane, MC 8000, Monroe, LA 71203, for all times material to this complaint.

The plaintiff is the mortgagor in a trust deed that was recorded on or soon after the date of February 20th 2012 in Carroll County, Maryland, in the amount of $388,000. The deed secured the payment of a promissory note ARGENT MORTGAGE COMPANY, LLC, the lender stated on the trust deed.

There were no other parties identified as having an interest in this trust deed or having any rights thereunder, except for Melinda Clayton who was named as trustee, within the instruments, (note and trust deed).

This complaint concerns the defendant's actions and conduct whereby it

acquired the plaintiffs' credit and financial information, at least enough to make it appear as if the defendant was working with the lender in the trust deed. The defendant then proceeded to send written communications to the plaintiff stating that it now either had rights to foreclose under the trust deed or that it was working with other parties who had rights to foreclose, unless the plaintiff made more financial disclosures and modified payment arrangements to the defendant.

The defendant pretended to help the plaintiff and lead him into making more and more financial disclosures and then either discontinued the communication after it obtained what it wanted, or created a situation to make it appear as if the plaintiff did not qualify, but then never returned or certified the destruction of the records and information obtain about the plaintiff.

Beginning from around January of 2014 and continuing through the present day, the plaintiff was contacted by the defendant and other organizations affiliated with, and that appeared to be working for the defendant. Plaintiffs have reason to believe that these organizations where owned and operated by the defendant and being used to conceal the identities of the defendant. These organizations threatened the plaintiffs with the taking their home and money unless they provided certain financial, personal, banking and identifying information to the defendant. Copies of these written communications are attached as Exhibits A and B.

The defendant also made inquiries of the plaintiff credit report but did not have a permissible purpose.

The defendant obtained records from the public domain that pertain to the plaintiffs' property and rights to his property, and then use these records to create additional records and convince the personnel working in the court system to participate in a public auction of the plaintiffs' home.

The defendant has deliberately and willfully, falsely presented itself and impersonated itself to the plaintiff as another person to obtain the plaintiffs' property for purposes not permitted by law or agreement.

The defendant had an affirmative duty to disclose the purposes for which it coerced plaintiffs' banking, personal, financial and identifying information.

The defendant's actions were deliberate and will and negligent and careless. The plaintiff was never provided with a disclosure of the defendant's document retention policy or an explanation of the purposes for which the plaintiffs' private information would be used.

The plaintiff requested a copy of the defendant's document retention policy but this request was ignored.

The defendant intentionally and willfully violated the plaintiffs' rights to privacy and to keep his private and personal records private.

The defendant engaged in communications with the plaintiff and deceived him into disclosing his private information. The defendant accomplished this by using the information already available to the defendant in the public domain to make it appear as if the defendant had some legal rights to obtain more of the plaintiffs' private information, when the defendant did not have such rights.

After obtaining plaintiffs' private information, defendant used this information for its own financial gain and ulterior and undisclosed purposes, and for purposes not permitted by law or by the plaintiff. The defendant has or intends to file claims with the Internal Revenue Service, such as Form 1099, using the plaintiffs' identifying information.

The defendant has or intends to use the plaintiffs' private information to sell or trade with third parties for the mutual benefit of these parties, exclusive of contrary to the interests of the plaintiff.

The defendant used this information to sell the plaintiffs' property at a public auction in order to further give the appearance that it was legal when it was not.

Since the date of October 2014, and to the best of plaintiffs' knowledge, the defendant has been in possession of plaintiffs' private information, and without the consent of the plaintiff and without legal authority.

The plaintiffs have reason to believe that among the list of what appears to be separate defendants, the each share the exact same interests in the foreclosure action, yet not the property being foreclosed upon. The defendant conducts its business within Carroll County Maryland and is involved in regular business activities in this county for

all times material to this complaint. The defendant is a "debt collector" as defined by the Maryland Consumer Protection Act.

The requisite notices and demands have been served upon the defendants.

## STATEMENTS OF FACT

The Defendant appears to be attempting to foreclose on a trust deed in which it is not named and under which is has no rights.

The defendant is not a legal entity and does not exist within the cognizance of the State of Maryland or the United States, but various individuals have been claiming to represent the rights of this series of words and that it has somehow magically acquired the rights under the trust deed and a promissory note that gave rise to the trust deed.

The defendant has never acquired any rights from the trustee stated in the trust deed, Wayne Lee, and there is no record anywhere showing that Wayne Lee has made any such appointment or assignment.

The defendant or its agents filed a request for an order to docket in the trial court of Maryland and with it, included a series of affidavits claims rights to which none of the parties had or have ever acquired.

The plaintiffs sent several requests for information, such as asking how the defendant or its agents obtained her banking information, to which no response was given. True and correct copies of which are attached with Exhibits A and B.

The Plaintiffs have requested information and records from the defendant as detailed herein and various records have been provided; however,

The defendant has willfully misrepresented its rights under the trust deed and provided false statements to the court regarding the claim that it had acquired the rights under the trust deed to act as a "substitute trustee" when no such rights are identified in the instrument.

The defendant exhibited a copy of a note, the original of which does not exist and a copy of a trust deed that it most probably acquired from the county records. The purported note does not exist, it's been either lost, stolen, mutilated, destroyed or spent or exchanged for other value or consideration, but the defendant does not have the

exhibited note (fabrication) because the note in a loan transaction is the loan and the borrower has already destroyed or disposed of the note in a way that allowed it to realize the gain from the value of the note, and because of this, the note does not exist.

The defendant has made false and deceptive certifications, false and deceptive affidavits and false and deceptive representations to the plaintiff in its efforts to obtain an order to docket for the purpose of conveying the title of plaintiffs' property to itself or another party for a profit.

The defendant has sent written communications to the plaintiff that misrepresent or are intended to deceive the plaintiff into believing that unless the plaintiff pays money to the defendant, the defendant has the right to foreclose and intends to foreclose unless payments are made to the defendant.

The plaintiff asked the defendant to identify its legal interests in the trust deed and note and to explain how it acquired these interests, but these requests were ignored.

The plaintiff also asked the defendant or its agent, to identify how and when it obtained permission to use or obtain the plaintiffs' personal banking and identifying information, including date of birth, mailing address, credit file and bank records, but no response has so far been given by the defendant. The defendant has remained silent in response to these questions and requests, yet the defendant had and does have a duty to answer.

As you can see, we have individuals claiming to have rights that are not established by any apparent consent or proper notice, and corporations representing corporations and agents acting in behalf of agents and trustees and third party strangers with no identifiable interest whatsoever, acting as if each had magically acquired certain rights to foreclose.

We first became aware of the defendant's action to undertake a foreclosure of our property in early January of 2014 when we received notification in the mail. The notice referenced the trust deed described herein, but the notice was sent by strangers not named in the trust deed, and not assigned by any authority (power of sale) within the trust deed or pooling and servicing agreement. The plaintiffs do not challenge the

validity of the recorded trust deed, but challenge only the collection actions undertaken by the defendants under the trust deed. The defendant has been and is undertaking an unfair and deceptive collection practice for the reasons stated herein. Plaintiffs demand a jury trial. WHEREFORE Plaintiff respectfully requests judgment against the defendant for penalties impose under the Maryland Consumer Protection Act, for actual damages, penalties imposed by statute, and for other relief as deemed appropriate by this court. DATED this ___ day of November, 2015.

Larry N. Dorsey, Plaintiff

Arlene E. Couch, Plaintiff